JUANITA NEAL, Employee-Plaintiff v. CAROLINA MANAGEMENT, Employer-Defendant, TRAVELERS INSURANCE COMPANY, Carrier-Defendant

No. COA97-428

(Filed 21 July 1998)

1. Workers' Compensation— temporary disability—maximum medical improvement

The Industrial Commission did not err in a workers' compensation action by concluding that plaintiff was entitled to continuing temporary total disability compensation until she returned to employment where the Commission awarded temporary total disability benefits after finding that plaintiff had reached maximum medical improvement. It is within the province of the Commission to determine when the healing period has ended, making allowances for rehabilitative procedures.

2. Workers' Compensation— rehabilitation—continued cooperation ordered

The Industrial Commission did not err in a workers' compensation action by ordering plaintiff to continue to cooperate with any reasonable request concerning vocational rehabilitation.

Judge TIMMONS-GOODSON dissenting.

NEAL v. CAROLINA MANAGEMENT

[130 N.C. App. 228 (1998)]

Appeal by plaintiff from an opinion and award entered 2 December 1996 by the North Carolina Industrial Commission. Heard in the Court of Appeals 3 December 1997.

*George W. Lennon for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Brady W. Wells, for defendants-appellees.*

WALKER, Judge.

The evidence before the Full Commission (the Commission) showed that plaintiff was a fifty-seven-year-old female whose employment history consisted mainly of assembly line labor and work as a waitress. She began working for defendant as a waitress in 1986. Prior to her beginning work for defendant, plaintiff suffered from a venous stasis ulcer in her left leg which resulted from a blood clot. This condition initially required surgery in 1976, but plaintiff continued working at various positions after that time.

On 30 April 1991, while working in defendant's employ, plaintiff sustained a compensable injury to her lower back while lifting a waffle iron. Plaintiff reported this injury to her employer and thereafter received treatment for this injury on 1 May 1991 at Carolina Urgent Care Center. At that time, she was diagnosed with a back strain and was treated with anti-inflammatory pain medications and physical therapy. After three weeks of treatment at Carolina Urgent Care Center, plaintiff was referred to Dr. Robert Appert, an orthopaedist. Dr. Appert examined plaintiff on 24 May 1991 and released her to return to work on the following day.

Plaintiff, however, continued to experience lower back pain and on 19 June 1991, a Form 21 agreement was approved by the Commission granting plaintiff temporary total disability benefits. Three months later, on 26 August 1991, plaintiff re-injured her back while lifting a heavy tray and she returned to Dr. Appert for treatment. After examining plaintiff, Dr. Appert noted that she had probably aggravated her prior back injury and he released plaintiff back to work on 28 August 1991 with no permanent disability. Thereafter, on 27 September 1991, plaintiff was examined by Dr. J. Thomas Bloem, an orthopaedist, who prescribed a different pain medication and additional physical therapy for plaintiff's back.

For approximately the next fifteen months, plaintiff was examined and treated for her chronic lower back and leg pain by Dr. David

E. Tomaszek (a neurosurgeon), Dr. Garry S. McKain (a chiropractor), Dr. Rosario Guarino (a neurologist), Dr. Lucas J. Martinez (a neurosurgeon), Dr. William R. Deans (a neurologist) and Dr. Lee A. Whitehurst (an orthopaedic surgeon).

During the period between 12 April 1993 and 20 April 1993, plaintiff attempted to return to work for defendant as a hostess/cashier. This job required plaintiff to be on her feet for long periods of time and plaintiff quit her position after she experienced increased back and leg pain. On 28 April 1993, plaintiff began seeing Dr. T. Craig Derian, an orthopaedic surgeon, who initially diagnosed plaintiff as suffering from degenerative disc disease. In order to accurately diagnose plaintiff's condition, Dr. Derian ordered another MRI procedure, which was performed on 25 August 1993. The results of the MRI showed a disc degeneration and a herniated disc, which Dr. Derian determined could be corrected by surgery. However, it was his opinion that if plaintiff did not pursue surgical intervention to correct her problem, then she had reached maximum medical improvement of her back on 13 September 1993. Furthermore, in addressing plaintiff's potential for future employment, Dr. Derian stated that "[plaintiff] continues to be permanently and totally disabled from gainful employment. It is unlikely she will be able to work at even a sedentary type job requiring sitting due to the fact that this greatly increases her pain."

Thereafter, plaintiff's left leg venous stasis ulcer reopened and she sought treatment from Dr. George W. Paschal, III, a general surgeon. After conservative treatments failed to remedy plaintiff's condition, Dr. Paschal referred her to Dr. Glenn M. Davis, a plastic surgeon, who performed a skin graft on plaintiff's left leg on 23 November 1993. Both Dr. Paschal and Dr. Davis agreed that following this procedure, plaintiff could return to sedentary work under controlled circumstances that allowed plaintiff to elevate her leg on occasion.

In April of 1994, defendants engaged Page Rehabilitation Services, Inc. (Page Rehabilitation) to resume vocational rehabilitation services for plaintiff. George Page (Page), the owner of Page Rehabilitation and a rehabilitation counselor, conducted an interview of plaintiff and requested information from her doctors before preparing a detailed report on 28 April 1994. In this report, he noted plaintiff's physical limitations and implemented a survey of possible job opportunities in plaintiff's home town. In a subsequent report

dated 14 June 1994, Page noted that he was "concerned that Dr. Derian has stated that [plaintiff] is unemployable. It is my opinion that Dr. Derian should probably give specific limitations, not try to determine the employability of an individual."

Thereafter, in August of 1994, Page located a job prospect for plaintiff with the Cystic Fibrosis Foundation in Wilson, North Carolina. The job required plaintiff to work four hours per day, four days per week, and entailed making phone calls to local residents seeking their help in fund raising activities for the Cystic Fibrosis Foundation. In addition, the job was sedentary and would allow for plaintiff to change positions as needed, as well as elevating her leg as needed. When plaintiff contacted the manager of the Cystic Fibrosis Foundation about this job opportunity, she stated she was not interested in a telemarketing position and then began detailing her past medical history. Plaintiff did not receive an offer for this job and all vocational services were suspended soon thereafter.

On 3 October 1994, plaintiff filed a request that her claim be assigned to hearing in order to determine whether she was entitled to permanent total disability benefits. The deputy commissioner found that plaintiff had suffered an injury by accident on 30 April 1991, which materially aggravated her pre-existing left leg venous stasis ulcer, and had reached maximum medical improvement of her back on 13 September 1993. From the deputy commissioner's opinion and award of temporary total disability benefits, both parties appealed to the Commission. Following a hearing, the Commission adopted the findings and conclusions of the deputy commissioner that plaintiff was temporarily totally disabled and further ordered plaintiff to continue receiving vocational rehabilitation therapy.

On appeal, plaintiff contends the Commission erred by: (1) awarding plaintiff temporary total disability benefits after finding that she had reached maximum medical improvement; (2) failing to find plaintiff permanently and totally disabled; and, (3) requiring plaintiff to continue cooperating with vocational rehabilitation efforts. Plaintiff argues that since temporary total disability benefits are only available during the healing period, once she reached maximum medical improvement, the Commission should have found her to be permanently and totally disabled. On the other hand, defendant contends that since plaintiff's claim was heard after she had received only limited vocational rehabilitation therapy, defendant should be afforded an opportunity to rebut the presumption of continuing dis-

ability by providing further vocational rehabilitation for the plaintiff in an attempt to find suitable employment for her.

When considering an appeal from the Commission, its findings are binding if there is any competent evidence to support them, regardless of whether there is evidence which would support a contrary finding. *Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996). Therefore, our Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings, and (2) whether those findings justify its conclusions of law. *Id.*

[1] Plaintiff's first two assignments of error are intertwined; therefore, we will address them together. In order to recover for a work-related injury, a plaintiff has the initial burden of proving disability. *Harrington v. Adams-Robinson Enterprises*, 128 N.C. App. 496, ——, 495 S.E.2d 377, 379 (filed 3 February 1998). However, once there is a Form 21 agreement, the employee is entitled to a presumption of continuing disability. *Id.*

Thereafter, temporary total disability benefits under the N.C. Gen. Stat. § 97-31 schedule are available to an injured employee during the healing period. *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 311, 326 S.E.2d 328, 329 (1985). The healing period has been described as the period of time during which the claimant is "unable to work because of [her] injury, is submitting to treatment . . . or is convalescing" and ends when, "after a course of treatment and observation, the injury is discovered to be permanent and that fact is duly established." *Id.* at 311, 326 S.E.2d at 329-330 (*quoting Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 289, 229 S.E.2d 325, 329 (1976), *disc. review denied*, 292 N.C. 467, 234 S.E.2d 2 (1977)).

In *Carpenter*, the defendant contended the plaintiff's healing period ended on 28 January 1981 when the plaintiff's physician stated that his condition had become "relatively static" and he could do no more for him in the way of treatment. *Id.* at 312, 326 S.E.2d at 330. However, the Commission determined, and this Court agreed, that the plaintiff's condition had only temporarily improved on 28 January 1981 and he did not actually reach maximum medical improvement until 19 November 1981, when it was apparent that his healing period had ended. *Id.*

Following *Carpenter*, this Court, in *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382, *cert. denied*,

344 N.C. 629, 477 S.E.2d 39 (1996), stated that "[t]he 'healing period' ends when an employee reaches 'maximum medical improvement' . . . [and, only] when an employee has reached 'maximum medical improvement' does the question of her entitlement to permanent disability arise." *Id.* at 204-205, 472 S.E.2d at 385. Further, at that point a claimant *may* establish permanent incapacity pursuant to either N.C. Gen. Stat. § 97-29, § 97-30 or § 97-31. *Id.* at 205, 472 S.E.2d at 385.

However, the time at which a claimant reaches maximum medical improvement does not necessarily coincide with the end of the healing period. In *Carpenter*, this Court stated:

> The point at which the injury has stabilized is often called "maximum medical improvement," although that term is not found in the statute itself. This term creates confusion, especially in cases like the present. It connotes that a claimant is only temporarily totally disabled and his body healing when his condition is steadily improving, and/or he is receiving medical treatment. Yet, recovery from injuries often entails a healing period of alternating improvement and deterioration. In these cases, the healing period is over when the impaired bodily condition is stabilized, or determined to be permanent, and not at one of the temporary high points. Moreover, in many cases the body is able to heal itself, and during convalescence doctors refrain from active treatment with surgery or drugs. Thus, the absence of such medical treatment does not mean that the injury has completely improved or that the impaired bodily condition has stabilized.

*Carpenter v. Industrial Piping Co.*, 73 N.C. App. at 311, 326 S.E.2d at 330. Further, in *Crawley*, this Court held that the claimant's healing period extended "beyond the period of maximum recovery from his operation to the time when there was such stabilization of his impaired bodily condition that it was established to be permanent." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. at 289, 229 S.E.2d at 329.

Here, even though the Commission determined that "plaintiff reached maximum medical improvement of her back on September 13, 1993," there is no finding by the Commission that plaintiff's healing period had ended for her back and for the aggravation of her pre-existing left leg venous stasis ulcer. Furthermore, it is within the province of the Commission to determine when the healing period has ended, *see Crawley v. Southern Devices, Inc.*, 31 N.C. App. at

288, 229 S.E.2d at 328, making allowance for "rehabilitative proce-
dures" under N.C. Gen. Stat. § 97-25, *infra.*

After a careful review, we find credible evidence existed upon
which the Commission could conclude that "[a]s a result of [her]
compensable injuries on April 30, 1991, plaintiff is entitled to contin-
uing temporary total disability compensation until plaintiff returns to
employment or upon further order of the Commission." Therefore,
we overrule plaintiff's first two assignments of error.

[2] Plaintiff's final assignment of error is that the Commission erred
by ordering her to "continue to cooperate with any reasonable
request by the defendant concerning vocational rehabilitation."
Under N.C. Gen. Stat. § 97-25, the Commission may order further
treatment or rehabilitative procedures which the Commission deter-
mines in its discretion to be reasonably necessary to effect a cure or
give relief for an injured employee. *See* N.C. Gen. Stat. § 97-25 (Cum.
Supp. 1997). Therefore, what treatment is appropriate for a particular
employee is a matter within the exclusive jurisdiction of the
Commission. *N. C. Chiropractic Assoc. v. Aetna Casualty & Surety
Co.*, 89 N.C. App. 1, 4, 365 S.E.2d 312, 314 (1988).

Here, the Commission determined that plaintiff should continue
to cooperate with defendant's reasonable requests concerning such
rehabilitation therapy and we find this conclusion to be supported by
competent evidence. Therefore, we overrule this assignment of error.

Affirmed.

Judge LEWIS concurs.

Judge TIMMONS-GOODSON dissents.

Judge TIMMONS-GOODSON dissenting.

I respectfully dissent from the majority's holding that the North
Carolina Industrial Commission (the Commission) did not err in
awarding plaintiff temporary total disability after finding that she had
reached maximum medical improvement of her compensable injury
and in ordering her to continue cooperating with vocational rehabili-
tation training.

Plaintiff contends that the Commission's conclusion that she is
"entitled to continuing temporary total disability compensation" is

not supported by its finding that she "reached maximum medical improvement of her back on September 13, 1993." I agree with plaintiff's contention and, therefore, dissent from the majority's holding to the contrary.

As the basis for its holding, the majority states,

Here, even though the Commission determined that "plaintiff reached maximum medical improvement of her back on September 13, 1993," there is no finding by the Commission that plaintiff's healing period had ended for her back and for the aggravation of her pre-existing left leg venous stasis ulcer.

Under the majority's analysis, it would appear that to award permanent disability, the Commission must find, in addition to finding maximum medical improvement, that the employee's healing period has ended. This reasoning does not square with this Court's holding in *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996).

At issue in *Franklin* was whether the Commission's findings supported its conclusion awarding the plaintiff temporary total disability and denying her permanent disability. Although the Commission found that Franklin reached maximum medical improvement on 4 January 1994, it concluded that she was "entitled to temporary total disability compensation until the end of the healing period[.]" On appeal, this Court held that "[t]emporary total disability is payable only 'during the healing period[,]' " and that *"[t]he 'healing period' ends when an employee reaches 'maximum medical improvement.' " Id.* at 204-05, 472 S.E.2d at 385 (emphasis added) (citations omitted). The Court further held that since the Commission determined that the plaintiff reached maximum medical improvement on 4 January 1993, it erred in awarding the plaintiff temporary total disability after that date. *Id.* at 206, 472 S.E.2d at 386.

In my view, *Franklin* is indistinguishable from and, thus, is controlling as to the present case. According to the *Franklin* court, maximum medical improvement, by definition, means that the employee's healing period has ended. Thus, it is not necessary that the Commission independently find that healing is complete before it can determine that permanent disability is appropriate. Therefore, I vote to reverse the Commission's award of temporary total disability benefits.

I, likewise, agree with plaintiff's argument that the Commission erred in requiring her to continue cooperating with vocational rehabilitation, as this portion of the Commission's award is also contrary to the Commission's findings of fact. The Commission found that plaintiff has been incapable of earning wages with defendant or any other employer since 10 April 1992; that she reached maximum medical improvement on 13 September 1993; and that no evidence was presented to show that there are any actual jobs she could successfully perform. The Commission did not find that plaintiff could actually benefit from further vocational rehabilitation or that it would assist her in restoring her impaired earning capacity. Hence, because the requirement that plaintiff continue vocational rehabilitation lacks support in the Commission's findings, I would reverse the award accordingly.

For the foregoing reasons, the opinion and award of the Commission should be reversed, and this matter should be remanded for a determination of that amount to which plaintiff is entitled for the permanent disability to her back and the aggravation of her existing venous stasis leg ulcer.