ANN ANDERSON, Employee, Plaintiff v. GULISTAN CARPET, INC., Employer; SELF-INSURED/HEWITT, COLEMAN & ASSOCIATES, INC., Servicing Agent; Defendant

No. COA00-1043

(Filed 17 July 2001)

**1. Workers' Compensation— occupational disease—not augmented by subsequent employment**

The Industrial Commission did not err in a workers' compensation action by finding that plaintiff's employment at two hotels did not augment the carpel tunnel syndrome which first developed when she worked for defendant where medical records indicated that plaintiff's condition worsened in the interval between her work with defendant and the beginning of her work with the hotels, one doctor testified that plaintiff's work with the hotels did not cause her occupational disease, two other doctors who treated plaintiff did not offer an opinion as to whether plaintiff's condition was augmented by her employment at the hotels, and there was evidence that scar tissue worsened plaintiff's condition. The findings of the full Commission are binding if supported by competent evidence, despite evidence to support contrary findings.

**2. Workers' Compensation— disability—Form 21 presumption—subsequent work—not suitable**

The Industrial Commission did not err in a workers' compensation action by finding that defendant failed to rebut plaintiff's Form 21 presumption of total disability due to carpel tunnel syndrome and ulnar palsy where defendant pointed to plaintiff's subsequent jobs as a hotel desk clerk, but there was evidence that plaintiff's duties at the hotels involved repetitive motion (including computer use), that she had difficulty performing these duties, that her work should be sedentary and light, and that she should refrain from repetitive activity.

**3. Workers' Compensation— disability—findings—maximum medical improvement**

A workers' compensation disability award for carpel tunnel syndrome was remanded for further findings where the Commission awarded temporary total disability without determining that plaintiff had not reached maximum medical improvement and where there was a conflict in the evidence on that

ANDERSON v. GULISTAN CARPET, INC.

[144 N.C. App. 661 (2001)]

point. Plaintiff is entitled to temporary total disability if she has not reached maximum medical improvement or permanent disability if she has.

　　Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from opinion and award of the North Carolina Industrial Commission filed 25 April 2000. Heard in the Court of Appeals 5 June 2001.

　　*Pressly, Thomas & Conley, P.A., by Edwin A. Pressly, for plaintiff-appellee.*

　　*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by H. Bernard Tisdale, III, for defendant-appellant.*

GREENE, Judge.

Gulistan Carpet, Inc. (Defendant) appeals an opinion and award of the Full Commission of the North Carolina Industrial Commission (the Full Commission) filed 25 April 2000 awarding Ann Anderson (Plaintiff) temporary total disability benefits.

The record shows that Plaintiff started working for Defendant on 21 November 1991 as a winder tender. Plaintiff's duties primarily "involved running end machines and lifting and moving bobbins on and off the machines repetitively." As a result of Plaintiff's job duties with Defendant, she developed bilateral carpal tunnel syndrome and bilateral tardy ulnar palsy in November 1994. The parties entered into a Form 21 Agreement which was approved by the Industrial Commission on 9 February 1995.

Dr. Robert Saltzman (Dr. Saltzman) performed bilateral carpal tunnel release procedures on Plaintiff in early 1995 and bilateral ulnar nerve release surgeries in the summer and fall of 1995. The last surgery Dr. Saltzman performed on Plaintiff occurred on 17 October 1995. After Plaintiff's surgery on 17 October 1995, she did not return to work for Defendant. On 1 April 1996, Dr. Saltzman noted Plaintiff had full range of motion to her upper extremities, although the scars from the surgery had thickened slightly. Plaintiff still complained of "pain down the flexor carpi ulnari bilaterally from the elbow to the wrist increasing with increased activities," in addition to "some residual numbness in the fifth and fourth fingers of the left hand." Dr. Saltzman determined Plaintiff had reached maximum medical

ANDERSON v. GULISTAN CARPET, INC.

[144 N.C. App. 661 (2001)]

improvement; however, Plaintiff had a "total of 10% disabilities of the arm and 10% disabilities of the hand." Dr. Saltzman recommended Plaintiff be retrained "into something less physically demanding that [would] require use of cerebral abilities more so than her muscle."

Plaintiff returned to see Dr. Saltzman on 20 May 1996, complaining of "increasing burning, tingling, [and] numbness into the fifth and fourth fingers of her left hand, especially across dorsum of the fourth and fifth metacarpals." Dr. Saltzman noted there was still scar tissue and discussed with Plaintiff the need to manipulate the scar tissue as to avoid any further problems. Dr. Saltzman recommended a nerve conduction study of Plaintiff's ulnar nerve at the elbow and wrist be completed. Plaintiff underwent ulnar nerve conduction studies on 3 June 1996, the results of which were normal. Dr. Saltzman again opined Plaintiff had reached maximum medical improvement as of April 1996 and still had "a total of 10% disability of both arms and 10% disability of both hands."

On 12 November 1996, Plaintiff was seen by Dr. Stephen J. Naso, Jr., M.D. (Dr. Naso). Plaintiff complained that following her 1995 surgeries,

> she had an increase in the tingling and numbness in the left upper extremity and . . . that the right upper extremity [was] . . . getting worse and in fact it [was] worse than it was . . . before the surgery. Aside from the tingling and numbness in both upper extremities[,] she complain[ed] of pain in the metacarpal phalangeal area of the index finger, long finger, ring finger[,] and small fingers. This pain [was] present in both hands. [Plaintiff] state[d] her hands constantly tingle and in fact the forearms constantly tingle from the elbow all the way down. . . . Aside from the pain mentioned above, [Plaintiff] also complain[ed] of pain that [was] constant in both thenar eminences.

Following an examination, Dr. Naso determined there was no atrophy, no swelling, no loss of motion, no loss of sensation, and no dystrophic changes.

On 10 February 1997, Plaintiff began working at the Comfort Inn in Statesville, North Carolina, as a front desk clerk. Plaintiff's duties at the Comfort Inn included checking guests in and out of the hotel, inserting reservations into the computer, providing rooms and keys to guests, and operating the cash register or computer as needed to log in guests. Plaintiff stated she had trouble performing the duties of

her job at the Comfort Inn, specifically when she used the computer. Plaintiff also testified she could not think of any duties "that did not require computer entry at the Comfort Inn." Before Plaintiff began working at the Comfort Inn, she had pain in her fingers, her fingers would tingle, and she would have pain under her arm and through her shoulder blade. After Plaintiff started working at the Comfort Inn, her pain "got worse" and she started developing spasms in her hands. Plaintiff was fired from the Comfort Inn on 26 June 1997 for breaking the "chain of command."

On 3 July 1997, Plaintiff was seen by Dr. Gary Poehling (Dr. Poehling). At the time Dr. Poehling observed Plaintiff, she had "complaints of spasms, burning, and tingling sensations throughout bilateral upper extremities, greater on the right." Plaintiff had difficulty performing "simple tasks such as writing or typing." Dr. Poehling diagnosed Plaintiff with complex regional pain syndrome in the bilateral upper extremities. Dr. Poehling opined Plaintiff would benefit from proper desensitization treatment and based on Plaintiff's presentation, "her true disability would be much greater than 10% to each arm."

Plaintiff started working at the Best Stay Inn on 25 July 1997 as a front desk clerk and was terminated on 3 September 1997 for charging unauthorized rates to customers. During Plaintiff's employment at the Best Stay Inn, the pain in her hands and arms never went away; moreover, it intensified when she used her hands. Plaintiff testified there was no job she could do in her physical condition. Plaintiff testified that her condition was "getting worse and worse. . . . [She] couldn't move [her] neck either way, and [the pain was] in her shoulders . . . [and] under [her] armpits. [She was] having chest pains."

Dr. Saltzman examined Plaintiff again on 26 November 1997 and noted Plaintiff complained of "[l]eft arm and hand pain on the ulnar aspect of the left forearm, hand, and finger with tingling." Plaintiff also complained of "radial pain over the thenar eminence, palm, and on the extensor surface of the MP joints of the index and middle fingers." Plaintiff's greatest complaint was "the 6 month spasming that she [was] having 8 or 10 times a day to the left thumb region." Plaintiff saw Dr. Saltzman again on 16 January 1998, after a Functional Capacity Evaluation and nerve conduction studies were performed. Dr. Saltzman rated Plaintiff as 30% total upper extremity disability, "listing 10% of each hand and 5% of each arm for a total of 15% for each upper extremity." Dr. Saltzman recommended Plaintiff

"return to work at a sedentary light level with the exception of overhead lifting."

On 5 March 1998, Plaintiff had a visit with Dr. Poehling. Dr. Poehling opined Plaintiff had "significant global tenderness along [her] bilateral levator scapulae," as well as "a mildly positive Tinel's at the wrist [and] . . . the Phalen's bilaterally." Dr. Poehling agreed with Dr. Saltzman's 15% permanent partial disability rating. Dr. Poehling stated Plaintiff should refrain from repetitive activity. In a deposition taken 2 October 1998, Dr. Poehling stated that in his opinion, Plaintiff's employment with the Comfort Inn or the Best Stay Inn did not increase the extent of any permanent disability and did not cause Plaintiff's problem. In his opinion, Plaintiff's problem was caused by the surgeries performed on her in 1995. Dr. Poehling opined it was reasonable Plaintiff was unable to complete the duties of a front desk clerk. Dr. Poehling further opined Plaintiff would need future treatment and medication.

In an opinion and award filed on 25 April 2000, the Full Commission made findings of fact consistent with the above-stated facts, including the following pertinent findings of fact:

4. . . . [P]laintiff's condition worsened due to scar tissue even though she had not returned to work. . . .

5. . . . [P]laintiff continued to experience problems and developed constant pain over her fingers and pain in her arms, shoulder blades[,] and hands. Her pain developed even though she did not work during 1996 and part of 1997.

6. Dr. Stephen Naso of the Carolina Hand Center saw [P]laintiff for a second opinion at the request of [D]efendant on December 28, 1994 and on November 12, 1996. He felt that [P]laintiff's condition had worsened since her surgeries. She had developed diffuse pain and tingling in her arms but there was no evidence of dystrophic changes. He felt she should be restricted to sedentary work with no pushing or pulling.

7. Plaintiff's vocational rehabilitation caseworker . . . was not able to locate suitable employment within [P]laintiff's geographic location. However, [P]laintiff located employment on her own at the Comfort Inn where she worked from February 10, 1997 through June 26, 1997. She worked for a short period as both a desk clerk and a guest service manager. . . . [H]er duties were to answer the telephone and take phone messages. She used the

computer frequently between 7:00 a.m. and 11:00 a.m. to check guests out. Furthermore, [P]laintiff used her right arm to swipe credit cards and to make electronic room keys. She also used the computer to make notes for housekeeping and to make room changes. Plaintiff often had other employees assist with the entries due to her hand problems. . . . Plaintiff had difficulty performing her duties and was eventually terminated on June 26, 1997.

. . . .

9. Thereafter, Best Stay Inn hired [P]laintiff on July 25, 1997 and she performed essentially the same duties as those she had performed at Comfort Inn. The same company owned both hotels. At Best Stay Inn, [P]laintiff worked the second shift, which required her to make greater use of the computer to check guests in, enter the method of payment, and make keys. Plaintiff was eventually terminated from Best Stay Inn on September 3, 1997. Plaintiff has not sought employment since this time.

10. Although [P]laintiff worked at the Comfort Inn and the Best Stay Inn, [D]efendant did not prove by the greater weight that either job constituted suitable employment or was indicative of [P]laintiff's wage earning capacity. While a general job description was provided to and approved by Dr. Saltzman's office, the job description was vague and insufficient. The job description provided to Dr. Saltzman was a general job description . . . which only referred to the duties of meeting guests, providing rooms and keys, and operating the cash register or computer to log in guests. It did not accurately describe the amount and frequency with which [P]laintiff would have to operate a keyboard and input computer information.

11. . . . [D]efendant did not prove by the greater weight that the two jobs were suitable . . . . Nevertheless, assuming arguendo that the jobs were suitable, [P]laintiff was unable to continue performing either job due to her upper-extremity condition and the resulting chronic regional pain syndrome and therefore failed at her attempts. In fact, Dr. Poehling felt that [P]laintiff would have had difficulty performing these jobs and that it was reasonable that she would not have been able to continue.

. . . .

ANDERSON v. GULISTAN CARPET, INC.

[144 N.C. App. 661 (2001)]

15. Plaintiff is capable of performing sedentary level work with no repetitive hand motions, no overhead lifting[,] and slow manual dexterity as defined in her functional capacity evaluation of January 13, 1998. Since [P]laintiff has not sought work since leaving Best Stay Inn on September 3, 1997, she is in need of vocational assistance.

16. Although [P]laintiff's work with Comfort Inn and Best Stay Inn may have temporarily increased her symptoms, her work did not expose her to the hazards of her occupational disease or her resulting pain condition or aggravate or augment, however slight, her occupational disease. Plaintiff had developed regional pain syndrome and dystrophic changes in her arms and her permanent partial impairment ratings had increased before her work with Comfort Inn or Best Stay Inn. Furthermore, [P]laintiff's condition deteriorated as a natural consequence of her original occupational disease contracted while working with [D]efendant even though she experienced some temporary exacerbation while working for the two hotels.

17. Plaintiff was last injuriously exposed to hazards of her occupational disease and resulting pain condition while employed with [D]efendant and any exposure at Comfort Inn or Best Stay Inn did not augment her condition.

18. Since [D]efendant has failed to establish that [P]laintiff's attempted employment was suitable and has failed otherwise to rebut the Form 21 presumption of disability, [P]laintiff continues to be unable to earn wages in any employment. However, [D]efendant is entitled to a credit for money earned by [P]laintiff while working for Comfort Inn and Best Stay Inn.

The Full Commission then made the following pertinent conclusions of law:

1. The medical evidence of record fails to establish by the greater weight that [P]laintiff's employment with Comfort Inn or Best Stay Inn exposed her to the hazards of her occupational disease and resulting pain condition or that her employment with them augmented her disease, however slight. Therefore, [P]laintiff was not last injuriously exposed to the hazards of her occupational disease while employed with Best Stay Inn and Comfort Inn. N.C.G.S. § 97-57 and *Rutledge v. Tultex Corp.*, 308 N.C. 85 (1983).

2. Plaintiff is entitled to the Form 21 presumption of disability which has not been rebutted as [D]efendant failed to prove that the jobs attempted by [P]laintiff constituted suitable employment and failed to rebut the presumption of disability otherwise. Therefore, subject to [D]efendant's credit and an attorney's fee hereinafter approved, [P]laintiff is entitled to reinstatement of her benefits beginning February 10, 1997 and continuing until [P]laintiff returns to work at the same or greater wages or further order of the [Full] Commission. *Brown v. S & N Communication, Inc.*, 124 N.C. App. 320 (1996) and N.C.G.S. § 97-32.

---

The issues are whether: (I) the Full Commission's findings of fact that Plaintiff's occupational disease was not augmented by her employment with the Comfort Inn and Best Stay Inn are supported by competent evidence; (II) Defendant rebutted the presumption of Plaintiff's continuing disability; and (III) Plaintiff was entitled to temporary total disability compensation after 10 February 1997.

This Court's review of opinions and awards of the Full Commission is limited to whether the record contains competent evidence to support the Full Commission's findings of fact, and whether the findings of fact support the conclusions of law. *Franklin v. Broyhill Furniture Indus.*, 123 N.C. App. 200, 204, 472 S.E.2d 382, 385, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996).

I

[1] Defendant argues the Full Commission erred in finding Plaintiff's work with the Comfort Inn and Best Stay Inn did not augment her occupational disease. We disagree.

In a case where an employee suffers from a compensable occupational disease, "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease . . . shall be liable." N.C.G.S. § 97-57 (1999). "It is not necessary that the exposure to the hazard either caused or significantly contributed to the development of the occupational disease; it is enough if the exposure augmented the disease process." *Harris v. North American Products*, 125 N.C. App. 349, 353, 481 S.E.2d 321, 323 (1997).

In this case, there is competent evidence to support the Full Commission's finding that Plaintiff's employment at the Comfort Inn

and the Best Stay Inn did not augment her occupational disease. Medical records indicate that during the period after Plaintiff no longer worked for Defendant and prior to working for the hotels, her condition worsened and she complained of "increasing burning, tingling, [and] numbness." Over the course of that period, Plaintiff's medical records show she developed pain over her fingers, arms, shoulder blades, and hands. Dr. Poehling testified Plaintiff's employment with the Comfort Inn and the Best Stay Inn did not cause her occupational disease. Neither Dr. Saltzman nor Dr. Naso offered an opinion as to whether Plaintiff's condition was augmented by her employment at the hotels. Further, there was evidence Plaintiff's condition worsened due to scar tissue and evidence in her medical records that Dr. Saltzman expressed the need to manipulate scar tissue to avoid any further problems. Accordingly, as there is competent evidence Plaintiff's employment at the Comfort Inn and the Best Stay Inn did not augment her occupational disease, the Full Commission did not err in so finding.[1]

## II

[2] Defendant next argues that even if Plaintiff's employment with the hotels did not augment her condition, the Full Commission erred in finding Defendant failed to rebut the Form 21 presumption because the jobs at the hotels were suitable employment for Plaintiff. We disagree.

If a Form 21 agreement is executed by the employer and employee and approved by the Industrial Commission, "the employee receives the benefit of a presumption that she is totally disabled." *Franklin*, 123 N.C. App. at 205, 472 S.E.2d at 386. The employer, however, may rebut this presumption by producing evidence that suitable jobs are available for the employee, taking into account her physical and vocational limitations, and she is capable of obtaining a suitable job. *Id.* at 206, 472 S.E.2d at 386. "A job is 'suitable' if the employee is capable of performing the job, given her 'age, education, physical limitations, vocational skills, and experience.'" *Id.* (quoting *Burwell v. Winn-Dixie Raleigh, Inc.*, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994)).

---

1. Defendant argues in its brief to this Court that there is overwhelming evidence Plaintiff's jobs with the hotels augmented her condition. The findings of the Full Commission, however, are binding on appeal if supported by competent evidence, despite plenary evidence to support contrary findings. *Locklear v. Stedman Corp.*, 131 N.C. App. 389, 393, 508 S.E.2d 795, 797 (1998).

ANDERSON v. GULISTAN CARPET, INC.

[144 N.C. App. 661 (2001)]

In this case, there is competent evidence to support the Full Commission's finding of fact that Defendant failed to establish Plaintiff's attempted employment at the hotels was suitable. Plaintiff and Defendant entered into a Form 21 agreement, thus, Plaintiff was cloaked in the presumption of disability. Defendant, however, failed to rebut this presumption. There is evidence Plaintiff's duties at the hotels involved repetitive motion and Plaintiff often had difficulty performing her duties at the hotels. Moreover, Dr. Saltzman recommended Plaintiff's work should be at a sedentary light level and Dr. Poehling opined Plaintiff should refrain from repetitive activity. Accordingly, the Full Commission did not err in finding Defendant failed to establish the hotel jobs were suitable employment.

III

[3] Defendant next argues that even if it did not rebut the Form 21 presumption, the Full Commission erred in awarding Plaintiff temporary total disability compensation after 10 February 1997 because Plaintiff's healing period had ended.[2]

Temporary disability shall be paid only during "the healing period," N.C.G.S. § 97-31 (1999), thus, when the healing period ends, a plaintiff's right to temporary disability also terminates. "The 'healing period' ends when an employee reaches 'maximum medical improvement.' " *Franklin*, 123 N.C. App. at 204-05, 472 S.E.2d at 385.[3] "Maximum medical improvement" occurs when the employee has either completely recovered from her injuries or her injuries have stabilized. *Crawley*, 31 N.C. App. at 289, 229 S.E.2d at 328-29. Once an employee has reached "maximum medical improvement," she must establish permanent incapacity and prove the extent of her disability. *Franklin*, 123 N.C. App. at 205, 472 S.E.2d at 385-86.

---

2. The amount and extent of disability compensation, i.e., temporary or permanent, is not reached by the Commission until the issue of disability is determined.

3. We note there is language in *Crawley v. Southern Devices, Inc.* suggesting the "healing period" of an injury encompasses more than medical improvement, but also encompasses "the time when the [plaintiff] is unable to work because of [her] injury, is submitting to treatment, which may include an operation or operations, or is convalescing." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 288-89, 229 S.E.2d 325, 328 (1976), *disc. review denied*, 292 N.C. 467, 234 S.E.2d 2 (1977). *Crawley*, however, holds compensation under section 97-31 "is made without regard to the loss of wage-earning power," and terminates when a plaintiff has reached "maximum improvement." *Id.* at 290, 229 S.E.2d at 329; *see Neal v. Carolina Mgmt.*, 130 N.C. App. 228, 235, 502 S.E.2d 424, 429 (1998) (Timmons-Goodson, J. dissenting) ("maximum medical improvement, by definition, means that the employee's healing period has ended"), *reversed*, 350 N.C. 63, 510 S.E.2d 375 (1999) (per curiam adopting the dissent); *see also Royce v. Rushco Food Stores, Inc.*, 139 N.C. App. 322, 328, 533 S.E.2d 284, 288 (2000).

**ANDERSON v. GULISTAN CARPET, INC.**

[144 N.C. App. 661 (2001)]

In this case, the Full Commission awarded Plaintiff temporary total disability, however, it failed to determine Plaintiff had not reached "maximum medical improvement," a prerequisite to concluding a plaintiff is entitled to temporary total disability. Although Dr. Saltzman determined Plaintiff had reached "maximum medical improvement" as of April 1996, Plaintiff's disability rating increased between April 1996 and the time of the hearing. Additionally, Dr. Poehling opined Plaintiff would need further treatment and medications. Because there is a conflict in the evidence as to whether Plaintiff had reached "maximum medical improvement," this case must be remanded to the Full Commission to enter findings of fact determining whether or not Plaintiff has reached "maximum medical improvement." On remand, if the Full Commission determines Plaintiff has not reached "maximum medical improvement," Plaintiff is entitled to temporary total disability.[4] If, however, the Full Commission determines Plaintiff has reached "maximum medical improvement," the Commission must address Plaintiff's entitlement to permanent disability compensation.

Affirmed in part, reversed and remanded in part.[5]

Judge BRYANT concurs.

Judge TIMMONS-GOODSON concurs in part and dissents in part with a separate opinion.

TIMMONS-GOODSON, J., concurring in part, dissenting in part.

I agree with the majority that the Commission was correct in finding that the nature of plaintiff's work did not augment her occupational disease and that defendant failed to rebut the Form 21 presumption. I disagree, however, with that portion of the opinion remanding the present case to the Commission for a finding as to whether plaintiff reached her "maximum medical improvement." Contrary to the majority's holding, I believe that the Commission's conclusion that plaintiff was entitled to temporary total disability is supported by the evidence. Therefore, I respectfully dissent.

---

4. Defendant does not dispute whether or not Plaintiff is entitled to total disability.

5. We do not address Defendant's remaining assignments of error as Defendant has not presented any argument in its brief to this Court relating to those assignments of error. See N.C.R. App. P. 28(b)(5).

Plaintiff is only entitled to temporary disability if she has not reached "maximum medical improvement," meaning that she has completely recovered or her injuries have stabilized. *See Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 288-89, 229 S.E.2d 325, 328-29 (1976). I believe there was competent evidence in the record indicating that plaintiff's condition had not stabilized. In April 1996, Dr. Saltzman determined that plaintiff reached her "maximum medical improvement." Nonetheless, her disability rating increased between the date of Dr. Saltzman's opinion and the time of the Commission's hearing. Furthermore, Dr. Poehling never opined that plaintiff had recovered or that her condition had stabilized. To the contrary, his records demonstrated that in July 1997, plaintiff could benefit from and needed further treatment. In fact, Dr. Poehling would later indicate, as late as March 1998, that any improvements in plaintiff's condition "will be gradual over a period of time." As the aforementioned evidence demonstrates the instability of plaintiff's condition, the Commission did not err in failing to find that she had not reached her "maximum medical improvement."

For the forgoing reasons, I would affirm the Commission's order and award in its entirety.