***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner; the appealing party has shown no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as
 STIPULATIONS
1. At the time of the injury by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The jurisdiction for this matter is properly with the North Carolina Industrial Commission.
3. On or about March 13, 1997, an employee-employer relationship existed between employee-plaintiff and employer-defendant.
4. Food Lion, Inc. is a duly authorized self-insured entity with Risk Management Services, Inc. acting as its servicing agent.
5. Employee-plaintiff sustained a compensable injury and specific traumatic incident arising out of and in the course of her employment on March 13, 1997 with resulting injury to her back.
6. Employee-plaintiff's average weekly wage is $188.20, resulting in a compensation rate of $125.47. The Pre-Trial Agreement dated May 3, 2000 which was submitted by the parties is incorporated by reference.
 ***********
Based upon all of the competent evidence in the record, the Full Commission makes the following
 FINDINGS OF FACT
1. Plaintiff, who was thirty-four years old on the date of the evidentiary hearing and who had her GED, began working for defendant in September 1996. At first she worked as a cashier at the grocery store, but she was later transferred to the produce department. Her job there involved unloading produce from trucks, placing it into coolers and then putting it out on the display shelves.
2. On March 13, 1997 plaintiff sustained a compensable injury when she lifted a fifty-pound bag of potatoes and began to turn with it. She then experienced a sharp pain in her low back which caused her to fall to her knees. Within minutes she was also having pain radiating down her right leg. No medical reports were stipulated or offered into evidence, but apparently she was initially treated by Dr. Dieck, who ordered an MRI which revealed a large herniated disc at L5-S1. She was then referred to Dr. Dalrymple, who performed surgery to decompress that interspace.
3. Following the operation, plaintiff continued to complain of pain, although the nerve root compression in her spine was relieved by the surgery. For some unexplained reason, defendant sent plaintiff to Dr. Lestini, an orthopedic surgeon in Raleigh, whose office was almost three hours from her home in Pamlico County. Dr. Lestini evaluated her on September 24, 1997. He found that she had a severely collapsed degenerative disc at L5-S1 with lateral foraminal impingement. However, plaintiff was also displaying significant non-organic physical signs which indicated symptom magnification on her part. Consequently, Dr. Lestini recommended conservative treatment but ordered a discogram.
4. Plaintiff subsequently underwent the discogram and gave invalid responses, since she reported symptoms when her good discs were injected as well as during sham injections where no contrast material was actually injected into the disc. Nevertheless, x-rays during the actual injections revealed an anterior tear at the L4-5 disc and gross derangement and collapse of the L5-S1 disc. Dr. Lestini weighed the objective findings with plaintiff's symptom magnification and concluded that she was not a good surgical candidate. Consequently, he did not recommend surgery; so she was referred to Dr. Spillmann, an occupational medicine specialist, for conservative care.
5. Dr. Spillmann began treating plaintiff on October 27, 1997. He also noted inconsistencies on her part during the examination and the fact that she failed some of the validity tests he performed. In order to get more objective information about her condition, he ordered a functional capacity evaluation. The evaluation was performed on November 20 and December 23, 1997 and, although plaintiff was found capable of performing light work, she did not give maximum effort and exhibited inconsistent behaviors on testing. Consequently, the functional capacity evaluation was not considered to be a valid test of her capacity for work.
6. Plaintiff subsequently went on her own to Dr. Miller because she thought that she needed surgery, and apparently Dr. Miller concurred. He then called Dr. Lestini who agreed to see plaintiff again. Plaintiff returned to Dr. Lestini on February 2, 1998 complaining of significant pain which she indicated was preventing her from participating in therapy. Since she did not appear to display non-organic signs at that examination, Dr. Lestini decided that surgery would be appropriate and he recommended an anterior fusion with removal of the L4-5 and L5-S1 discs and insertion of cages into those interspaces. The operation was performed March 18, 1998.
7. Dr. Lestini followed plaintiff's recovery from surgery and made recommendations regarding pool therapy and physical therapy. Due to a combination of transportation problems and lack of motivation on her part, plaintiff did not follow-up adequately with his recommendations. She continued to complain of symptoms. At the office visit on August 3, 1998, Dr. Lestini decided that she had a pain-processing problem and recommended a pain management clinic. He did not specify a location but left it to the caseworker to find a clinic closer to plaintiff's home. Defendant then offered plaintiff the opportunity to go to the clinics in High Point or in Charlotte. There were problems with transportation issues, however, since plaintiff's family only had one vehicle and her husband needed it to get to work. Once in High Point, plaintiff was expected to stay in an apartment several blocks from the facility without a car to drive to the clinic, to the grocery store, to a pharmacy or to a restaurant. Defendant did not adequately address those issues, although the clinic would generally provide transportation to and from the hotel. On the other hand, contrary to her testimony, plaintiff did not want to go to the pain clinic and was resistant to efforts to resolve problems with her attending a pain program. Consequently, she never went through a pain management program.
8. Dr. Lestini last saw plaintiff on February 23, 1999. Although she was still complaining of symptoms, he was satisfied that there was no structural defect associated with the fusion. He determined that she had reached maximum medical improvement and released her to return to work with restrictions. Subsequently in May, defendant offered work to plaintiff which was believed to be within Dr. Lestini's restrictions. Plaintiff did not report to work, allegedly because she was recovering from surgery for an incisional hernia, but she offered no medical evidence to support her allegation. In fact, she offered no medical evidence at all.
9. Defendant has admitted liability for benefits under the Workers' Compensation Act for plaintiff's March 13, 1997, injury and has paid compensation to her for temporary total disability, although the exact period of compensation was not clear from the evidence. Defendant filed a Form 24 request to stop payment and, by Administrative Decision Order filed June 10, 1999, was allowed to suspend payment of compensation from November 30, 1998, until plaintiff's refusal to participate in the pain management program ceased. Plaintiff appealed from the ruling by requesting a hearing.
10. Despite the fact that some of plaintiff's resistance to the pain clinic was because she did not want to attend, she did raise legitimate issues relating to her lack of transportation. Not only would she not have a car to drive to the facility each day, but she would not have access to transportation to get groceries or meals. Defendant did not provide an adequate explanation for or a solution to that problem. Consequently, plaintiff's refusal to go to the clinic in High Point was justified.
11. However, plaintiff did not want to attend the pain clinic and was not cooperative with defendant's efforts to provide that treatment. Consequently, she reached maximum medical improvement with respect to her injury by February 23, 1999, when Dr. Lestini released her from medical care.
12. On appeal, plaintiff's counsel raised the question whether Dr. Lestini's determination of maximum medical improvement, and related release to return to work, were premature considering that plaintiff had not attended the pain management program and should have been provided with this program before the issue of MMI was addressed. Although plaintiff's counsel has made a persuasive argument to cause the Commission to review Dr. Lestini's testimony and medical records, plaintiff has not presented any evidence to question the competency of Dr. Lestini and his opinion. The subjective concern of plaintiff's counsel is not evidence and does not contradict evidence which is otherwise accepted and unquestioned in the record. If plaintiff was concerned about Dr. Lestini's finding of MMI, she should have sought the opinion of another medical doctor, or at least had her counsel attend Dr. Lestini's deposition and ask the appropriate questions. Plaintiff has offered no evidence to negate Dr. Lestini's finding of MMI.
13. Because Dr. Lestini released plaintiff to return to light work, defendant offered work to her which was anticipated to be within the doctor's restrictions, and plaintiff has provided no medical evidence to support her refusal to return to work, the evidence establishes that plaintiff was capable of working and earning wages equivalent to or higher than her former average weekly wage as of May 10, 1999.
14. Plaintiff sustained a thirty-five percent permanent partial disability to her back as a result of the injury by accident giving rise to this claim.
15. Plaintiff has not proven that she developed any other medical problems as a result of this back condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the undersigned makes the following
 CONCLUSIONS OF LAW
1. Since plaintiff refused to attend the pain management program for valid reasons, at least in part, she has not unjustifiably refused medical treatment. G.S. § 97-25.
2. Plaintiff is entitled to compensation for temporary total disability at the rate of $125.47 per week for the period from November 30, 1998 through February 23, 1999, subject to a credit for compensation previously paid to her during that period. G.S. § 97-29; G.S. §97-42.
3. Temporary total disability ends when a claimant reaches maximum medical improvement. Moretz v. Richards and Associates, Inc.,316 N.C. 539, 342 S.E.2d 844 (1986); Anderson v. Gulistan Carpet,Inc., ___ N.C. App. ___, 550 S.E.2d 237 (2001); Franklin v. BroyhillFurniture Industries, 123 N.C. App. 200, 472 S.E.2d 382, cert. denied,344 N.C. 629, 477 S.E.2d 39 (1996);But see Russos v. Wheaton Indus., ___ N.C. App. ___,551 S.E.2d 456 (2001).
4. Plaintiff may elect compensation for permanent partial disability as between wage loss and her rating. She has been presumed to choose the remedy which would provide the greater recovery, which under the facts of this case the rating currently provides a greater recovery. G.S. §97-30; G.S. § 97-31; Gupton v. Builders Transport, 320 N.C. 38,357 S.E.2d 674 (1987). Plaintiff has not established a permanent partial disability and thereby is presumed to accept benefits for her rating. Therefore, Plaintiff is entitled to compensation at the rate of $125.47 per week for one hundred five weeks for the thirty-five percent permanent partial disability she sustained to her back as a result of this injury by accident, but subject to an offset for compensation previously paid for the period after February 23, 1999. G.S. § 97-31 (23).
5. Plaintiff is entitled to have defendants provide all medical compensation arising from this injury by accident, subject to the limitations of Section 97-25.1. G.S. § 97-2(19); G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $125.47 per week for her temporary total disability for the period from November 30, 1998 through February 23, 1999, but subject to an offset for compensation previously paid during that period. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay compensation to plaintiff at the rate of $125.47 per week for one hundred and five weeks for her permanent partial disability, but subject to a credit for compensation previously paid for the period after February 23, 1999. This compensation has also accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. An attorney's fee in the amount of twenty-five percent of the net compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the aforesaid award and paid directly to Mr. Ervin.
5. Defendants shall pay the costs.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER