***********
Having reviewed the evidence of record and the briefs, and after hearing arguments of counsel, the Full Commission modifies the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as a matter of law the following, which the parties entered into as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff's date of injury is December 18, 1995.
3. On that date, the employer-employee relationship existed between the plaintiff and the defendant-employer.
4. Continental Casualty Company is the compensation carrier on the risk.
5. Plaintiff's average weekly wage is $344.00.
6. From December 23, 1995, through January 17, 1997, defendants paid plaintiff compensation at the rate of $229.34 per week. From January 18, 1997, through the date of the hearing, defendants paid plaintiff compensation at the rate of $114.67 per week.
7. The following documents were stipulated into evidence:
 Pre-trial agreement, which was marked as Stipulated Exhibit 1;
 Plaintiff's medical records, which were marked as Stipulated Exhibit 2;
 Plaintiff's post-injury wage records from defendant-employer, which were marked as Stipulated Exhibit 3.
8. The parties participated in a mediation of this claim, and defendants paid the entirety of the mediator's fee in the amount of $612.00, thereby advancing plaintiff's share of $311.00, as required by order of the Industrial Commission.
 ***********
Based upon the competent evidence of record, the undersigned makes the following:
 FINDINGS OF FACTS
On December 18, 1995, plaintiff sustained an admittedly compensable injury to her low back while lifting a bag of cat litter in the course of her employment with defendant-employer. Plaintiff was thirty-six years old.
Plaintiff has a history of medical problems, in addition to the problems with her low back, including morbid obesity, diabetes, gastroenterological maladies, and third degree burns to her feet, which required skin grafts and resulted in an altered gait.
As a result of her compensable low back injury, plaintiff has undergone two surgeries and has received treatment from numerous physicians. Dr. Craig Derian performed the second surgery and released her from his care on January 27, 1997.
Shortly thereafter, plaintiff began seeking treatment for cervical complaints and ultimately underwent surgery by Dr. Michael Haglund on October 21, 1997. Although plaintiff continues to argue that her cervical condition was the result of the December 18, 1995, incident, the Full Commission Opinion and Award of August 22, 2000, denied the cervical claim, and this decision was upheld by the Court of Appeals.
On or about May 6, 1998, plaintiff began a course of treatment for right knee problems, for which she ultimately underwent surgery by Dr. Robert Esposito on July 7, 1998. Plaintiff has not asserted any claim for workers' compensation benefits associated with her right knee condition.
In the August 22, 2000, Opinion and Award, the Full Commission found that Dr. Blackburn was an appropriate physician to manage plaintiff's ongoing pain treatment with regard to plaintiff's low back injury. This Opinion and Award was an appeal from a Deputy Commissioner's decision following a January 30, 1998, hearing. On October 9, 2000, the Full Commission entered an Order authorizing plaintiff to treat with Dr. Blackburn.
Prior to the August 22, 2000, Opinion and Award, Dr. Blackburn had referred plaintiff to Dr. Allan Shang, a specialist in pain management, for further evaluation and treatment. Plaintiff first saw Dr. Shang on or about October 29, 1999, and continued to see him through August 30, 2000. When plaintiff first consulted Dr. Shang, she complained of "whole body pain" comprised of her low back, legs, hips, neck and knees.
On March 17, 2000, plaintiff presented Dr. Shang with complaints in her neck, shoulders, hips, thighs and lower back. At that time, Dr. Shang wrote plaintiff a note, at her request, which excused her from work "because of her illness."
On March 24, 2000, Dr. Shang diagnosed plaintiff as having a broad based disc protrusion at L4-5. Subsequent evaluation revealed that the disc protrusion did not warrant consideration for surgery.
Plaintiff continued to see Dr. Blackburn, who also referred her to Dr. Haglund for evaluation of her low back complaints. Because of plaintiff's continued complaints, defendant-carrier assigned case manager Angie Herpich to coordinate plaintiff's medical care. Ms. Herpich attempted to schedule for a return appointment with Dr. Derian, plaintiff's authorized treating physician. Dr. Derian's office advised that he could no longer provide treatment to plaintiff for reasons that plaintiff's attorney could explain. Therefore, at the carrier's request, Ms. Herpich scheduled plaintiff to be evaluated by Dr. Michael Gwinn, a physiatrist in Cary, who also had been one of plaintiff's initial treating physicians following the December 18, 1995, injury. Issues concerning plaintiff's initial refusal to cooperate with an evaluation by Dr. Gwinn was resolved in the Full Commission's November 22, 2000, Order. Defendants have attempted to resurrect this dispute, but the Commission's Order stands as written.
Dr. Gwinn evaluated plaintiff on January 25, 2001. As was the case with Dr. Shang, Dr. Gwinn indicated in his report that he did not believe that plaintiff was capable of working.
Plaintiff's treating physicians are in agreement that plaintiff should undergo treatment at a multi-disciplinary pain clinic. Defendants authorized treatment at the Carolina Back Institute in Cary. Although plaintiff did not personally object to that facility, plaintiff's counsel lodged an objection on her behalf because (1) the distance to Cary from plaintiff's home is allegedly greater than the distance to the Duke facility in Durham, and (2) plaintiff's treating doctor recommended the Duke facility. In fact, the Duke facility was recommended by Dr. Haglund.
The Commission is not persuaded by either of these reasons. It is true that Dr. Blackburn, an authorized treating physician, referred plaintiff to Dr. Haglund, who is associated with Duke and recommends the Duke clinic. The reason for refusing to attend the program in Cary results from litigiousness, and not from any medical reason, driving distance, or personal choice. Plaintiff's counsel argues that the program in Cary involves a hotel stay during the week whereas the Duke program is entirely outpatient. While this may be true, an intensive program away from home is often more beneficial than outpatient programs when psychological issues or the family's enabling behavior is a factor. These factors have not been developed in this case.
It would appear at this point that plaintiff would benefit less from a program that has become the subject of the kind of litigiousness involved in this case. In its discretion, the Full Commission has determined that an appropriate choice for plaintiff's further treatment at this time is the pain program at Triangle Orthopaedic Associates.
Plaintiff seeks a declaration that she is "permanently and totally" disabled. The Full Commission agrees with the Deputy Commissioner that plaintiff currently has no wage earning capacity as a result of her injury of December 18, 1995. As indicated by Dr. Haglund, however, plaintiff's capacity to function can be more accurately ascertained through a functional capacity evaluation. Furthermore, as plaintiff may benefit from treatment through a pain clinic, she is not yet at maximum medical improvement. Plaintiff argues that the pain management clinic will assist only with "quality of life" issues rather than with vocational issues, but the evidence does not support such a finding. Plaintiff is a relatively young woman, has worked with preexisting disabilities in the past, and the Commission cannot say that the back pain from the December 1995 injury will render her unable to find meaningful employment in the future. Her impairment rating may not change, but her ability to cope with pain and her functioning may improve.
In its decision filed March 5, 2002, the Court of Appeals held that the date of maximum medical improvement was the earliest at which either party could seek a determination of permanent loss of wage-earning capacity. The Court remanded to the Commission the issue of permanent and total disability.
In so holding, the Court of Appeals relied on Franklin v. BroyhillFurniture Indus., 123 N.C. App. 200, 472 S.E.2d 382 (1996) and Andersonv. Gulistan Carpet, Inc., 144 N.C. App. 661, 550 S.E.2d 237 (2001). SinceFranklin and Anderson, case law has developed to recognize that "temporary total disability" does not necessarily end if the employee has not regained her ability to earn pre-injury wages upon reaching maximum medical improvement. See Knight v. Wal-Mart Stores, Inc., 149 N.C. App. 1,562 S.E.2d 434, disc. review denied, 355 N.C. 749, 565 S.E.2d 667
(2002); Russos v. Wheaton Indus., 145 N.C. App. 164, 551 S.E.2d 456
(2001), disc. review denied, 355 N.C. 214, 560 S.E.2d 135, reh'g denied,355 N.C. 494, 564 S.E.2d 44 (2002). Thus, a determination of total and permanent disability is not required when the employee reaches maximum medical improvement. A determination of total and permanent is not necessary when the employee continues to receive weekly total disability benefits.
Chapter 97 provides for partial wage loss benefits (G.S. § 97-30) and total wage loss benefits (G.S. § 97-29). There is no category called "temporary" total disability, although use of that term has become commonplace. The second paragraph of G.S. § 97-29 speaks to cases of "total and permanent" disability as defined in G.S. § 97-31(17). This statutory total and permanent disability is a predetermination, by operation of law, of total and permanent disability, i.e., lifetime total disability, upon the occurrence of a catastrophic loss as defined in G.S. § 97-31(17). Outside this predetermined total and permanent disability, a determination whether a total disability is permanent requires the Commission to gaze into a crystal ball, based on current circumstances, to decide what the future holds. The last scenario the Commission should want is an award of total and permanent disability to an injured employee who thereafter returns to work (absent the G.S. § 97-31(17) situation).
In the present case, plaintiff's primary limiting factor is pain. She was forty-two years old on the date of the last evidentiary hearing. She is receiving total disability benefits pursuant to the Act. When there is no dispute regarding an injured employee's right to continuing total disability benefits, the issue of permanency (outside G.S. §97-31(17)), should be found nonjusticiable. Benefits under the Act are weekly; a determination of "permanent" and total does not affect those benefits.
After completion of the medical depositions in this case, plaintiff filed a motion for reinstatement of total disability compensation as of March 17, 2000. Defendants agreed to reinstate total wage loss benefits as of March 17, 2000. Plaintiff is seeking sanctions, pursuant to G.S. § 97-88.1, for defendants' alleged unreasonable conduct in failing to reinstate total benefits after Dr. Shang wrote plaintiff out of work as of March 17, 2000. At the most recent hearing before the Deputy Commissioner, plaintiff had argued for sanctions for defendants' alleged unilateral termination of temporary partial disability benefits. Defendants, however, continued to pay for temporary partial disability benefits for the full 300 weeks, and plaintiff continued to receive temporary partial disability benefits at the time of the evidentiary hearing. The Court of Appeals had not yet ruled on the suitability of plaintiff's interim employment, but, more significantly, defendants did not accept that plaintiff's condition had worsened and that as of March 17, 2000, plaintiff could not work. Plaintiff's primary argument in the current Full Commission appeal is that plaintiff should be entitled to attorney's fees for (1) failing to pay Dr. Blackburn and Haglund's bills and failing to approve the Duke pain clinic treatment, and (2) the failure to reinstate total disability benefits after March 17, 2000. As for the first argument, the record is not clear as to what bills were or were not paid or why. As for the second argument, plaintiff contends that defendant should have reinstated total disability benefits at least by the time defendant received Dr. Gwinn's report. Defendants argue that it was not clear from the report whether plaintiff's disability at that point resulted from her back injury. Defendants also argue that defendants should be entitled to challenge a change of condition claim, at least until they have questioned the doctor at a deposition, and defendants reinstated total disability compensation at the conclusion of that deposition. Considering all these arguments, the Commission finds the issue to be close and thus declines to award attorney's fees under section § 97-88.1.
To the extent that any of the foregoing findings of fact constitute conclusions of law, they are incorporated into the Conclusions of Law below.
 ***********
Based upon the foregoing, the undersigned makes the following:
 CONCLUSIONS OF LAW
Plaintiff is entitled to compensation for her total disability as of March 17, 2000. G.S. § 97-29.
Plaintiff's request to be awarded total and permanent disability benefits is denied. G.S. § 97-29.
Defendants are responsible for plaintiff's medical treatment reasonably related to her injury on December 18, 1995, including treatment by Dr. Blackburn, Dr. Shang, Dr. Haglund (excluding the cervical treatment) and Dr. Gwinn. G.S. § 97-25. The limitation of G.S. § 97-25.1
applies.
Treatment at the pain program at Triangle Orthopaedic Associates is appropriate further medical treatment for plaintiff. G.S. §97-25.
Defendants' defense of this claim was not without reasonable ground, and plaintiff's request for sanctions should be denied. G.S. § 97-88.1.
Defendants shall be reimbursed for plaintiff's share of the mediator's fee from benefits due plaintiff, as provided in the Award below. N.C.I.C. Rules for Mediated Settlement Conferences, Rule 7(c).
 ***********
Based upon the foregoing, the undersigned enters the following:
 AWARD
1. Subject to the attorney's fee approved herein, defendants shall pay plaintiff compensation for total disability at the rate of $229.33 per week from March 17, 2000, and continuing until further order of the Commission. Any amounts already paid by defendants for this period shall offset the amount owed under this Award.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation that has accrued shall be deducted from the amount due plaintiff and be paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be paid to plaintiff's counsel as reasonable compensation for his services in connection with plaintiff's claim.
3. Defendants shall pay all bills for medical expenses incurred as a result of plaintiff's low back injury of December 18, 1995, including the bills that have been incurred with Dr. Blackburn, Dr. Shang, Dr. Haglund, and Dr. Gwinn.
4. Defendants shall pay for authorized medical treatment reasonably related to plaintiff's low back injury of December 18, 1995, so long as such treatment tends to effect a cure, give relief or lessen plaintiff's disability, which treatment shall include the pain program at Triangle Orthopaedic Associates, and subject to the limitation of G.S. §97-25.1. Plaintiff is hereby ordered to cooperate with treatment by Triangle Orthopaedic Associates.
Plaintiff's request for sanctions against defendants is denied.
Defendants shall be reimbursed $311.00 for plaintiff's share of the mediator's fee by deducting $100 from the third check due plaintiff for two months and $111.00 from the third check in the third month.
Defendants shall pay the costs.
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER