***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the original hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On the date of the injury giving rise to this claim, defendant employed three or more employees.
3. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant.
4. There was no carrier on the risk for workers' compensation purposes on the date of the injury giving rise to this claim.
5. Plaintiff alleges that he sustained an injury by accident on 10 June 1992, a claim that in previous proceedings the Industrial Commission has found to be compensable.
6. Incorporated by reference into this opinion are the Interlocutory Opinion and Award for the Full Commission, as well as the pretrial agreement from the initial hearing. In addition, the evidence includes all evidence admitted at the initial hearing, including deposition transcripts. The parties have also stipulated into evidence the transcript of Dr. Sweet's recent deposition testimony, and payroll records pertaining to plaintiff's employment with defendant.
7. Plaintiff's claim for an injury by accident to his back is compensable. The issue addressed herein is to what medical and/or indemnity benefits is plaintiff entitled as a result. To render this decision, a determination regarding plaintiff's average weekly wage and resulting compensation rate also must be made.
 ***********
Based upon the greater weight of the competent and credible evidence of record in this matter, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 25 June 1999, the date of the second evidentiary hearing before the Deputy Commissioner in the matter, plaintiff was 49 years old. Plaintiff was not working in any capacity as of that date, nor was he receiving social security disability benefits.
2. On 10 July 1992, the date of plaintiff's work-related injury, plaintiff had been employed as a truck driver by defendant for several weeks, beginning on or about 29 April 1992. Plaintiff drove as a team with another driver, and his job was to make deliveries to California and back. Plaintiff was also required to load and unload his tractor trailer.
3. Defendant compensated plaintiff in the amount of $600.00 per trip to California. Plaintiff was paid by the trip and not by the week, and each trip took between five and seven days to complete.
4. Plaintiff's pay was divided in part into a per diem amount of between $28.00 and $32.00 per day. The per diem was an advance to cover plaintiff's expenses and meals while he was on a trip, and was deducted from the $600.00 per trip that plaintiff earned as wages. However, theper diem amount was not taxed and was not reported as wages on plaintiff's W-2 form. If plaintiff's expenses or advances exceeded the $28.00 to $32.00 he was allotted per day, these additional expenses would be deducted from his $600.00 per trip wage and thus his taxable wage would decrease. Plaintiff was allowed the per diem expenses deduction from taxes even if his expenses were less than the per diem advance. Furthermore, out of the $600.00 per trip received by plaintiff, defendant also subtracted out any fines, tickets, or damages to the truck which may have been received or sustained by plaintiff.
5. Plaintiff's average weekly wage is determined by the Full Commission to be $600.00, yielding a weekly compensation rate of $400.02. The evidence shows that plaintiff was paid $600.00 per trip and each trip took between five and seven days. The payroll records offered by defendant do not show any itemized per diem amounts which were allegedly deducted from his wages and paid in cash; therefore, the records are not indicative of the wages actually paid to plaintiff. The amounts deducted from plaintiff's wages for fines, tickets or damages to the truck should not be used to demonstrate a lower average weekly wage. Accordingly, the Full Commission finds that establishing plaintiff's wages by using the base pay for each weekly trip most nearly approximates the amount which plaintiff would have earned had he not been injured.
6. On 10 July 1992 plaintiff sustained a compensable injury by accident when he adjusted the load in his trailer and in the process he picked up or pushed a roll of cloth that had fallen. Plaintiff felt an immediate pull in his back when he lifted or pushed the roll of cloth. Plaintiff has not worked for defendant or for any other employer since this incident on 10 July 1992. Defendant stipulated that plaintiff's injury by accident is compensable.
7. Plaintiff was taken by his supervisor, Rocky Hersek, to the emergency room at Cleveland Memorial Hospital the night of 10 July 1992. On 13 July 1992, plaintiff began seeing a chiropractor, Dr. Karl Jordan. Plaintiff treated with Dr. Jordan, at defendant's expense, through 4 August 1992, with spinal manipulation and physical therapy. On 4 August 1992, because plaintiff was continuing to have unresolved symptoms, Dr. Jordan referred plaintiff to Dr. Raymond C. Sweet, a neurosurgeon.
8. In early August 1992, plaintiff began treating with Dr. Mark W. Cook, a chiropractor. Plaintiff has continued to treat with Dr. Cook on a regular basis at least through the date of the second hearing before the Deputy Commissioner.
9. Aside from the emergency room visit on the date of his compensable injury by accident and his continuing treatment with Dr. Cook, plaintiff's only other medical treatment has been with Dr. Sweet. Plaintiff initially saw Dr. Sweet on 21 October 1992, and at that time Dr. Sweet's impression was that plaintiff had a herniation at L4-5 on the left with nerve damage to the L5 nerve root. On 28 October 1992, plaintiff underwent an MRI which did not reveal a ruptured disc or pinched nerve, but did show a compression fracture of the body at L4. Dr. Sweet recommended a bone scan, and on 16 November 1992, Dr. Sweet recommended physical therapy, which plaintiff did not undergo due to his inability to pay for the treatment.
10. From 16 November 1992 through 13 July 1999, plaintiff's only treatment has been with Drs. Jordan and Cook. Plaintiff testified that during this time he received treatment from Dr. Cook once or twice per month and that the treatment would alleviate his pain for short periods. Other than those brief periods following treatment, plaintiff testified that he remained unable to work in any capacity due to pain and his physical limitations caused by his injury. Plaintiff's testimony is regarded as credible by the Full Commission.
11. On 13 July 1999, plaintiff was reevaluated by Dr. Sweet as ordered by Deputy Commission Pfeiffer. At this evaluation, Dr. Sweet found plaintiff to be at maximum medical improvement, and rated plaintiff with a 15% permanent partial impairment of his back as a result of the compression fracture he sustained on 10 July 1992. Dr. Sweet did not identify a surgical problem, and therefore surgery is not indicated. Dr. Sweet released plaintiff to return to work with the permanent restrictions of no repetitive bending, climbing, crawling, or lifting more than 15 pounds. In addition to these restrictions, plaintiff must be allowed to change positions at least every 30 minutes.
12. Plaintiff reached the end of his healing period by 13 July 1999, the date he was found by Dr. Sweet to be at maximum medical improvement. Since 13 July 1999, plaintiff has not made reasonable efforts to find suitable employment, nor has he shown that seeking employment would have been futile as a result of his permanent restrictions, his age, education, skills and other factors affecting employability. Therefore, plaintiff has not proven that his disability continued after 13 July 1999.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on 10 July 1992 was $600.00, which yields a compensation rate of $400.02. Plaintiff's average weekly wage is calculated based upon the $600.00 per weekly trip paid by defendant. This method of calculation provides the most fair result to both parties in that it most nearly approximates the amount plaintiff would have earned had he not sustained the compensable injury by accident on 10 July 1992. N.C. Gen. Stat. § 97-2(5).
2. On 10 July 1992, plaintiff sustained a compensable injury by accident as the direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
3. An employee's own testimony as to pain and ability to work is competent evidence as to the employee's ability to work. See Matthews v.Petroleum Tank Service, Inc. 108 N.C. App. 259, 423 S.E.2d 532 (1992). In the instant case, plaintiff has testified that between 16 November 1992 and 13 July 1999, during which time he was treated by Drs. Jordan and Cook, he experienced short periods of some relief, but otherwise he remained totally disabled.
4. As a result of his compensable injury by accident, plaintiff was totally disabled from 11 July 1992 through 13 July 1999, the date by which plaintiff had reached the end of his healing period and was at maximum medical improvement. Neal v. Carolina Mgmt., 130 N.C. App. 228,502 S.E.2d 424 (1998), rev'd, 350 N.C. 63, 510 S.E.2d 375 (1999);Franklin v. Broyhill Furniture Indus., 123 N.C. App. 200, 472 S.E.2d 382
(1996). Plaintiff is entitled to temporary total disability compensation during this period of time.
5. Defendant is entitled to a credit for payments made to plaintiff when not due and payable under its voluntary salary continuation. N.C. Gen. Stat. § 97-42.
6. After 13 July 1999, plaintiff was no longer totally disabled, but he retained a permanent partial disability in the amount of 15% to his back as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-31(23). Plaintiff is entitled to permanent partial disability benefits to compensate him for this permanent disability.
7. Plaintiff is entitled to receive past and future medical compensation for his compensable injury by accident for as long as it is or was reasonably necessary to effect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19), 97-25; Hylerv. GTE Products Co., 333 N.C. 258, 425 S.E.2d 698 (1993).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the credit owed defendant and to the attorney's fee awarded below, defendant shall pay plaintiff total disability benefits in the weekly amount of $400.02 from 11 July 1992 through 13 July 1999. This amount has accrued and shall be paid in a lump sum.
2. Defendant is entitled to a credit for the amount paid to plaintiff for salary continuation purposes. This amount shall be deducted from the amount owed to plaintiff in the Paragraph 1 of this Award.
3. Plaintiff is entitled to 45 weeks of benefits in the amount of $400.02 per week for his permanent partial impairment. This award shall be paid in a lump sum and is subject to the attorney's fee awarded below.
4. Plaintiff's counsel is entitled to a reasonable attorney's fee of 25% of the total amount owed to plaintiff in paragraphs one and three of this Award. Of the accrued compensation owed plaintiff under Paragraphs 1 and 3, one fourth shall be deducted and shall be forwarded directly to plaintiff's counsel.
5. Defendant shall pay for all medical treatment incurred or to be incurred in the future by plaintiff, including treatment by chiropractor Mark Cook, according to procedures adopted by the Commission and as mandated by applicable Workers' Compensation statutes.
6. Defendant shall bear the costs of this proceeding.
7. It is Ordered that this case be referred to the Industrial Commission Fraud Section for further proceedings.
This the ___ day of February, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER