SHEILA JEAN ROYCE, Employee-Plaintiff v. RUSHCO FOOD STORES, INC.,
CASUALTY RECIPROCAL EXCHANGE and LIBERTY MUTUAL INSURANCE
COMPANY, Carriers-Defendants

No. COA99-932

(Filed 1 August 2000)

**1. Workers' Compensation— ankle ulcer—result of injury**

The Industrial Commission did not err in a workers' compensation action by finding that bleeding from an ulcer on plaintiff's ankle in 1995 was the direct and natural result of her 1994 injury where the Commission relied upon the testimony of plaintiff's primary care physician, Dr. Thompson, that plaintiff's three ankle injuries aggravated her pre-existing condition and were significant contributing factors in her continuing problems with her ulcer. Although there was conflicting medical testimony, the Commission was entitled to give greater weight to Dr. Thompson's testimony.

**2. Workers' Compensation— temporary total disability—sufficiency of evidence**

There was competent evidence in the record to support the Industrial Commission's conclusion in a workers' compensation action that plaintiff was temporarily and totally disabled from 16 February 1995 until 7 July 1995 where plaintiff testified that she went to see her doctor on 16 February 1995 and was ordered to stay completely off her foot, the doctor continued to treat plaintiff, and the Commission found that plaintiff had reached maximum medical improvement as of 7 July 1995, based on an insurance form.

**3. Workers' Compensation— two insurance companies— credit for payment by one**

The Industrial Commission did not err by refusing defendant Casualty a $3,500 credit in a workers' compensation action where plaintiff had executed a $3,500 settlement with Liberty Mutual Insurance Company. Defendants failed to cite any authority which entitled them to a credit under the Workers' Compensation Act; even assuming the settlement constituted a payment by the employer under N.C.G.S. § 97-42, defendants are not entitled to a credit under that statute because the $3,500 was "due and payable" when paid.

**ROYCE v. RUSHCO FOOD STORES, INC.**

[139 N.C. App. 322 (2000)]

### 4. Workers' Compensation— maximum medical improvement—evidence

The Industrial Commission did not err by finding in a workers' compensation action that plaintiff reached maximum medical improvement on 7 July 1995 where plaintiff's doctor completed an insurance form on that date in which he stated that plaintiff's ankle ulcer had healed but that her chronic venous stasis was permanent.

### 5. Workers' Compensation— permanent disability—burden of proof

The Industrial Commission did not err by placing the burden on plaintiff to prove permanent disability after 7 July 1995 where her Form 21 presumption of disability ended because she returned to work for defendant at her prior rate of pay, and her presumption of temporary total disability ended when she reached maximum medical improvement on 7 July 1995.

### 6. Workers' Compensation— inability to find alternative employment—insufficient evidence

The Industrial Commission did not err in a workers' compensation action by concluding that plaintiff did not meet her burden of proving that it would be futile for her to seek other employment where the Commission found, based on the testimony of plaintiff's doctor, that she was not capable of working in a job that required standing eight to ten hours a day but that she could perform a seated job with her leg elevated, that plaintiff made no effort to find alternative employment within her restrictions after she reached maximum medical improvement, and that she failed to present any medical or vocational evidence that it would be futile for her to seek other employment.

Appeal by plaintiff and defendants Rushco Food Stores, Inc. (Rushco) and Casualty Reciprocal Exchange (Casualty) from judgment entered 18 February 1999 by the North Carolina Industrial Commission (Commission). Heard in the Court of Appeals 11 May 2000.

*Jackson & Jackson, by Phillip T. Jackson, for employee-plaintiff.*

*Young Moore and Henderson P.A., by Joe E. Austin, Jr. and Dawn M. Dillon, for employer-defendant Rushco and carrier-defendant Casualty.*

ROYCE v. RUSHCO FOOD STORES, INC.

[139 N.C. App. 322 (2000)]

WALKER, Judge.

Plaintiff sustained compensable injuries to her left ankle on 15 May 1993, 5 February 1994, and 23 April 1994, resulting in an ulcer. Defendant Liberty Mutual Insurance Co. (Liberty) was the carrier on risk for the first compensable injury, and defendant Casualty was the carrier for the second and third compensable injuries. On 16 February 1995, plaintiff's ankle "re-ulcerated, spontaneously rupturing and bleeding." Plaintiff sought benefits which were denied by defendants. After a hearing, the deputy commissioner found that plaintiff was entitled to temporary total disability from 16 February 1995 until 7 July 1995. The deputy commissioner then concluded that the "two defendant-carriers are jointly and severally liable" and that each "shall pay at least fifty percent of the compensation due under this Opinion and Award."

Each party appealed to the Commission. Prior to the hearing before the Commission, plaintiff and defendant Liberty executed a compromise settlement agreement which was approved by the Commission on 18 July 1997. On 18 February 1999, the Commission affirmed the deputy commissioner's decision, with "minor modifications."

The Commission's findings include the following:

10. On 16 February 1995, plaintiff was standing at the cash register at work when a co-worker noticed that plaintiff was bleeding from the site of the previous injuries on her left ankle. Plaintiff does not recall having bumped into anything. Plaintiff again sought treatment from Dr. Thompson. The same ulcer site involved in the three prior injuries had re-ulcerated, spontaneously rupturing and bleeding.

11. Plaintiff did not sustain an injury by accident arising out of or in the course of her employment with defendant-employer on 16 February 1995.

12. Dr. Thompson testified that due to plaintiff's pre-existing severe chronic venostasis problem with varicosities, even bumping could and did cause a difficult or non-healing ulceration that resulted in spontaneous bleeding. The veins just underneath the surface of the skin over the ulceration were dilated and placed under tremendous pressure when plaintiff stood all day. At very high venous pressure, plaintiff's veins would break and bleed. All

three injuries by accident aggravated plaintiff's pre-existing condition and were significant factors in the development and continuing problems of the non-healing ulcer on the left ankle that spontaneously erupted in February 1995.

13. Dr. Douglas Adams reviewed plaintiff's medical records at the request of the defendant-carrier Casualty . . ., although he never examined plaintiff. Based upon his review of the medical records, Dr. Adams opined that, assuming the ulcer developed after the first injury, the subsequent two injuries in 1994 did not substantially contribute to the condition plaintiff incurred in 1995. However, Dr. Adams further testified that he could not make a good estimate as to the cause of the 1995 condition because he did not examine plaintiff, and that Dr. Thompson was in a better position to evaluate plaintiff's condition. The Full Commission gives more weight to Dr. Thompson's causation opinions.

14. The non-healing ulcer on plaintiff's left ankle was a direct and natural result of all three compensable injuries by accident, each of which significantly contributed to the development and continuing problems of the non-healing ulcer which spontaneously erupted in February 1995. Any attempt to apportion causation among the three injuries or to apportion liability between the two carriers on the risk would be purely speculative.

15. The spontaneous bleed in 1995 was the direct and natural result of the admittedly compensable injury by accident which occurred on 23 April 1994. The 23 April 1994 injury significantly contributed to plaintiff's continuing problems with the non-healing ulcer.

16. After the spontaneous eruption of the non-healing ulcer on 16 February 1995, plaintiff was unable to perform her normal job duties with defendant-employer because she was required to stand for prolonged periods. She was, however, capable of working in a job that allowed her to sit with her legs elevated. Defendant-employer did not offer her work that was suitable to her capacity.

17. On 7 July 1995, Dr. Thompson completed an insurance form relating to plaintiff in which he stated that the ulcer had healed, but that the severe chronic venous stasis changes in both legs were permanent. Plaintiff reached maximum medical improvement on 7 July 1995.

18. Because defendant-employer did not offer plaintiff work that was suitable to her capacity, she was unable to work from 16 February 1995 until she reached maximum medical improvement on 7 July 1995.

. . .

20. Both plaintiff's pre-existing problems and the non-healing ulcer were significant factors contributing to her disability. As a result of these factors, plaintiff is not capable of working in a job that requires standing from eight to ten hours a day. She can perform a seated job if she can keep her left leg elevated most of the time. As a result of the non-healing ulcer, . . ., plaintiff has not been capable of performing the job she held with defendant-employer since 16 February 1995.

21. Plaintiff made no effort to find alternative employment within her restrictions after she reached maximum medical improvement. The greater weight of the evidence does not show that it would be futile for plaintiff to seek other employment.

22. The evidence fails to show that, after 7 July 1995, plaintiff was unable to earn the same wages she earned before the spontaneous bleed.

Based on these findings, the Commission concluded:

2. . . . Defendant-employer and defendant Casualty . . . are liable for the disability that arose following the February 1995 spontaneous bleed.

3. As a result of her continuing problems with the non-healing ulcer, plaintiff was temporarily and totally disabled from 16 February 1995 until 7 July 1995 and is entitled to compensation at the rate of $145.20 per week for that period. G.S. 97-29.

4. The greater weight of the evidence fails to show that, after she reached maximum medical improvement, plaintiff was unable to earn the same wages she earned before her third injury by accident. Therefore, plaintiff is not entitled to total disability payments after that date. G.S. 97-29.

. . .

6. The issue of whether plaintiff retained any permanent partial disability once she reached maximum medical improvement is left open for further hearing. G.S. 97-31.

**ROYCE v. RUSHCO FOOD STORES, INC.**

[139 N.C. App. 322 (2000)]

Defendants assign as error the Commission's: (1) finding that the 1995 ankle bleed was the direct and natural result of the 23 April 1994 injury and that defendant Casualty is liable for any benefits after the 1995 bleeding incident; (2) finding that plaintiff was disabled from 16 February 1995 until 7 July 1995; and (3) failing to conclude that defendant Casualty is entitled to a $3,500.00 credit for plaintiff's settlement with defendant Liberty. Plaintiff assigns that the Commission erred in: (1) finding that she had reached maximum medical improvement on 7 July 1995; (2) placing the burden on her to prove disability after 7 July 1995; and (3) finding that she did not meet her burden of proving that it would be futile for her to seek other employment.

When considering an appeal from the Commission, this Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings, and (2) whether the Commission's findings justify its conclusions and decision. *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 496 S.E.2d 790 (1998). Findings of fact by the Commission, if supported by competent evidence, are conclusive on appeal even though there is evidence which would support a contrary finding. *Bullman v. Highway Comm.*, 18 N.C. App. 94, 195 S.E.2d 803 (1973).

[1] We first address defendants' contention that the Commission erred in finding that the 1995 ankle bleed was the direct and natural result of the 23 April 1994 injury and that defendant Casualty was liable for any benefits after the 1995 bleeding incident. Defendants argue that since there was no evidence that the "23 April 1994 accident contributed in any greater degree to the 1995 spontaneous bleed or plaintiff's continuing problems than the other two injuries," apportionment of the award was proper. In the recent decision of *Smith v. Champion Int'l*, 134 N.C. App. 180, 182, 517 S.E.2d 164, 166 (1999), *citing Hoyle v. Carolina Associated Mills*, 122 N.C. App. 462, 465-466, 470 S.E.2d 357, 359 (1996), this Court held:

> The work-related injury need not be the sole cause of the problems to render an injury compensable. If the work-related accident contributed in some reasonable degree to plaintiff's disability, she is entitled to compensation.

Furthermore, in *Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 390-391, 465 S.E.2d 343, 346, *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996) (citations omitted), this Court addressed the issue of apportionment, stating:

. . . apportionment is not proper where the evidence before the Commission renders an attempt at apportionment between work-related and non-work related causes speculative or where there is no evidence attributing a percentage of the claimant's total incapacity to her compensable injury, and a percentage to the non-compensable condition.

Here, the Commission relied on the testimony of Dr. Willard Thompson regarding causation. In his deposition, Dr. Thompson, plaintiff's primary care physician since 1989, testified that each of plaintiff's three prior ankle injuries aggravated her pre-existing condition and were significant contributing factors in her continuing problems with her non-healing ulcer. After reviewing plaintiff's medical records, Dr. Adams testified that, in his opinion, "the two subsequent injuries in 1994 did not substantially contribute to the condition plaintiff incurred in 1995." However, Dr. Adams admitted that "he could not make a good estimate as to the cause of the 1995 condition because he did not examine plaintiff, and that Dr. Thompson was in a better position" to evaluate plaintiff.

Since the Commission was entitled to give greater weight to the testimony of Dr. Thompson, we conclude that there was competent evidence in the record to support the Commission's finding that the "spontaneous bleed in 1995 was the direct and natural result" of the 23 April 1994 injury. Additionally, the Commission found that "any attempt to apportion causation among the three injuries or to apportion liability between the two carriers on the risk would be purely speculative;" therefore, the Commission properly concluded that defendants Rushco and Casualty were "liable for the disability that arose following the February 1995 spontaneous bleed."

[2] Defendants next contend the Commission erred in finding that plaintiff was temporarily and totally disabled from 16 February 1995 until 7 July 1995. Temporary total disability is payable only during the healing period, which ends when the employee reaches maximum medical improvement. *Franklin v. Broyhill Furniture Industries*, 123 N.C. App. 200, 472 S.E.2d 382, *cert. denied*, 344 N.C. 629, 477 S.E.2d 39 (1996). "The healing period . . . is the time when the claimant is unable to work because of his injury, is submitting to treatment, . . ., or is convalescing." *Crawley v. Southern Devices, Inc.*, 31 N.C. App. 284, 288-289, 229 S.E.2d 325, 328 (1976), *disc. review denied*, 292 N.C. 467, 234 S.E.2d 2 (1977).

**ROYCE v. RUSHCO FOOD STORES, INC.**

[139 N.C. App. 322 (2000)]

In the case at bar, plaintiff testified that she went to see Dr. Thompson on 16 February 1995, after discovering that her ankle had re-ulcerated and was bleeding. According to plaintiff, Dr. Thompson cleaned her wound, "ordered [unna boots], antibiotics, and a painkiller," and gave her written instructions "to stay off of my foot, completely off, just propped up, nothing but going to the bathroom." Plaintiff further testified that Dr. Thompson continued to treat her until February 1996 and that during that time, she saw Dr. Thompson "[e]very week for about two months, and then he took it for every month and then three months, and then I'll see him again in July." As discussed below, based on an insurance form completed by Dr. Thompson, the Commission found that plaintiff had reached maximum medical improvement as of 7 July 1995. Thus, there is competent evidence in the record to support the Commission's finding that plaintiff was temporarily and totally disabled from 16 February 1995 until 7 July 1995.

[3] Defendants lastly assign as error the Commission's failure to allow defendant Casualty a $3,500.00 credit since plaintiff executed a $3,500.00 settlement with defendant Liberty. On 18 July 1997, prior to hearing this case, the Commission approved the settlement agreement. Plaintiff argues that the issue of a credit is not properly before this Court. Although the deputy commissioner concluded that the "two defendant-carriers are jointly and severally liable," there is nothing in the record to indicate that defendant Casualty presented this issue to the Commission. Assuming the credit issue was presented to and decided by the Commission, plaintiff further contends that defendant Casualty is not entitled to a credit since there is "no basis in the [Workers' Compensation] Act for such a credit."

While there is no specific statutory provision addressing contribution between insurance carriers, we note that N.C. Gen. Stat. § 97-42 (1999) provides:

Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

Even assuming the $3,500.00 payment by defendant Liberty to plaintiff pursuant to the settlement constituted a payment by the "employer" under N.C. Gen. Stat. § 97-42, we conclude that defendants Rushco and Casualty are not entitled to a credit since the deputy

commissioner's opinion required defendant Liberty to pay "at least fifty percent of the compensation due" and rendered such payment "due and payable" before the $3,500.00 was paid to plaintiff. Thus, since defendants have failed to cite to any authority which entitles them to a credit under the Workers' Compensation Act, defendants' assignment of error is overruled.

[4] We next address plaintiff's argument that the Commission erred in finding that she had reached maximum medical improvement on 7 July 1995. Maximum medical improvement is reached when the impaired bodily condition is stabilized or determined to be permanent. *Carpenter v. Industrial Piping Co.*, 73 N.C. App. 309, 326 S.E.2d 328 (1985). The Commission found that "[o]n 7 July 1995, Dr. Thompson completed an insurance form relating to plaintiff in which he stated that the ulcer had healed, but that the severe chronic venous stasis changes in both legs were permanent." Dr. Thompson testified that plaintiff's condition had "healed" or returned to the "baseline" after the 16 February 1995 incident, but that her chronic venous stasis is permanent. Therefore, the Commission properly concluded that plaintiff reached maximum medical improvement on 7 July 1995.

[5] Plaintiff also contends the Commission erred in placing the burden on her to prove her disability after 7 July 1995. Specifically, plaintiff argues that she is entitled to a presumption of continuing disability under the Form 21 agreements, which the Commission approved on 14 November 1994 regarding the 5 February 1994 and 23 April 1994 injuries. However, since plaintiff returned to work for defendant Rushco at the same rate of pay she earned prior to these two injuries, plaintiff's presumption of disability under the Form 21 agreement ended. *See Watkins v. Motor Lines*, 279 N.C. 132, 181 S.E.2d 588 (1971).

Plaintiff further contends that she is entitled to a presumption of continuing disability after 7 July 1995 since the Commission determined she was temporarily and totally disabled as of 16 February 1995 and defendants failed to rebut this presumption. Defendants counter that plaintiff is not entitled to a presumption of continuing disability after 7 July 1995, the date she reached maximum medical improvement.

Although a plaintiff has established that she is entitled to temporary total disability, she must also prove her entitlement to permanent disability. *Brice v. Sheraton Inn*, 137 N.C. App. 131, 527 S.E.2d 323

**ROYCE v. RUSHCO FOOD STORES, INC.**

[139 N.C. App. 322 (2000)]

(COA99-418, filed 21 March 2000). In *Brice v. Sheraton Inn, supra,* this Court held that although the plaintiff had met her burden of proving temporary total disability, she failed to prove that she was permanently and totally disabled after the date she was released to return to work without restriction, and no burden shifted to the defendant to refute a claim of permanent and total disability. Therefore, under *Brice,* plaintiff's presumption of temporary total disability ended on 7 July 1995 when she reached maximum medical improvement, and plaintiff had the burden of proving she was entitled to permanent disability.

[6] Finally, plaintiff contends that the Commission erred in finding that she did not meet her burden of proving it would be futile for her to seek other employment because of her pre-existing condition. "In order to prove disability, the employee need not prove he unsuccessfully sought employment if the employee proves he is unable to obtain employment." *Peoples v. Cone Mills Corp.,* 316 N.C. 426, 444, 342 S.E.2d 798, 809 (1986). In *Peoples,* our Supreme Court held:

> Where . . . an employee's effort to obtain employment would be futile because of age, inexperience, lack of education or other preexisting factors, the employee should not be precluded from compensation for failing to engage in the meaningless exercise of seeking a job which does not exist.

*Id.* Defendants argue that plaintiff failed to present sufficient evidence to establish that it would be futile for her to seek employment since "[s]he is not near retirement age and has obvious skills working with the public, in inventory assessment, in ordering stock, and in working with money, doing paper work, which she has developed during her 22 years as a convenience store manager." Defendants cite to a recent decision of this Court, *Demery v. Converse, Inc.,* 138 N.C. App. 243, 530 S.E.2d 871 (2000), in which this Court found that the plaintiff did not meet his burden of showing he was "totally incapable" of earning wages where his "physician did not testify that he could not work, only that his work was restricted to certain limitations."

Here, based on the testimony of Dr. Thompson, the Commission found that "plaintiff is not capable of working in a job that requires standing from eight to ten hours a day" but that she could "perform a seated job if she can keep her left leg elevated most of the time." The Commission further found that although defendant Rushco did not offer plaintiff employment that was "suitable to her capacity," plain-

tiff "made no effort to find alternative employment within her restrictions after she reached maximum medical improvement." Additionally, we note that plaintiff failed to present any medical or vocational evidence tending to establish that it would be futile for her to seek other employment. *See Peoples*, 316 N.C. 426, 342 S.E.2d 798. Thus, the Commission properly concluded that plaintiff did not meet her burden of proving it would be futile for her to seek other employment.

Affirmed.

Judges McGEE and HUNTER concur.