* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
2. An employer-employee relationship existed between plaintiff and defendant-Greensboro Pipe Co. (hereinafter "Greensboro Pipe") on June 5, 2003, the first date of accident.
3. On June 5, 2003, plaintiff sustained an admittedly compensable injury by accident to his back arising out of and in the course of his employment with Greensboro Pipe.
4. For the injury by accident on June 5, 2003, plaintiff's average weekly wage was $520.94, yielding a compensation rate of $347.29.
5. An employer-employee relationship existed between plaintiff and defendant-Mabe Trucking Co. (hereinafter "Mabe Trucking") on January 23, 2006, the date of the second injury by accident.
6. On January 23, 2006, plaintiff slipped and fell. This admittedly compensable injury arose out of and in the course of plaintiff's employment with Mabe Trucking.
7. National Benefits America was the carrier or third party administrator for Mabe Trucking on January 23, 2006. Subsequent to the Deputy Commissioner's hearing, counsel for Mabe Trucking advised that National Benefits America had gone out of business and that the carrier was The Phoenix Fund, Inc., In Rehabilitation. Synergy Coverage Solutions is now the third party administrator. *Page 3 
8. As of January 23, 2006, plaintiff's average weekly wage was $584.62, yielding a compensation rate of $389.77 per week.
9. The pre-trial agreement, dated January 12, 2007, is incorporated by reference. In addition, the parties stipulated into evidence documents which consisted of forms filed with the Industrial Commission related to I.C. 349606; forms filed with the Industrial Commission related to I.C. 601725; plaintiff's discovery responses; plaintiff's resume; mediator's bill; and medical records. Those exhibits consist of 410 pages, which were identified as Stipulated Exhibit 1.
10. Greensboro Pipe and Selective Insurance Company agree that they underpaid certain temporary total disability benefits in that they used the wrong compensation rate, and that an administrative adjustment will be made for that underpayment. In addition, Greensboro Pipe and Selective Insurance Company agree that they owe plaintiff temporary total disability benefits for the following periods of time for which they have made no previous payments: May 21, 2004 to June 3, 2004; June 16, 2004 to July 25, 2004; and April 26, 2005 to June 12, 2005. Greensboro Pipe Co. and Selective Insurance Company further agree that plaintiff suffered certain permanent partial disability as a result of the accident on June 5, 2003, and that they have not paid plaintiff any permanent partial disability benefits to date.
11. Following the accident on January 23, 2006, plaintiff returned to work for Mabe Trucking on the following dates during 2006: January 26, 27, 30 and 31; February 1, 2 (one-half day), 3, 20 (one-half day) and 21, 2006.
12. The issues before the Full Commission are whether plaintiff's present condition is a result of his first or second injury by accident; and which defendant is responsible for any additional compensation plaintiff may be entitled to receive under the North Carolina Workers' Compensation Act. *Page 4 
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was 37 years old at the time of the Deputy Commissioner's hearing. He is a high school graduate and most of his work experience has been as a truck driver, dispatcher, or load coordinator.
2. Plaintiff was employed by Greensboro Pipe as a truck driver on June 5, 2003. His duties included driving, loading and unloading trucks.
3. On June 5, 2003, plaintiff was moving a piece of pipe that was about 18 feet in length and weighed over 300 pounds when he felt immediate low back pain and dropped to his knees. As a result of his injury, plaintiff was seen by Dr. Jeffrey C. Beane on June 10, 2003. Dr. Beane diagnosed a lumbar strain and possible recurrent disc herniation. Dr. Beane ordered a lumbar MRI, which demonstrated a large, broad based disc herniation at L5-S1, as well as an annular tear at L4-5. As a result of the accident on June 5, 2003, Dr. Beane performed surgery on plaintiff on August 29, 2003, which included a microdiskectomy at L5-S1 on the right. On November 24, 2003, Dr. Beane placed plaintiff at maximum medical improvement and assessed him with a 15% permanent partial impairment rating to the back.
4. Following the surgery on August 29, 2003, plaintiff continued to have chronic low back pain. The intensity of the pain rose and fell, but it never went away. At times, the low back pain was so intense that it prevented plaintiff from working. He was out of work for almost eight weeks between May and July 2004 and almost seven weeks between April and June 2005 due to chronic back pain. *Page 5 
5. During 2004 and 2005, plaintiff continued to see Dr. Beane and his partner, Dr. Richard D. Ramos. Plaintiff's pain became so bad that he received epidural steroid injections from Dr. Ramos during mid-2004 and again in mid-2005. After the injections, plaintiff's pain improved for a period of time. Dr. Ramos performed injections on two occasions during July 2005, and following those injections, plaintiff felt much better; however, the severe pain returned within a few weeks.
6. On June 3, 2004, plaintiff saw Dr. Beane for continued back pain, left leg pain, and right buttock and right leg pain that went into the right heel. Dr. Beane noted that plaintiff had spondylosis and epidural fibrosis at L5-S1 and that he had a non-compressive disc protrusion with effacement in the lateral recess and moderate central canal stenosis at L4-5.
7. On July 26, 2004, plaintiff began working for Mabe Trucking as a load coordinator, which was a desk job and required no heavy lifting.
8. On March 17, 2005, plaintiff saw Dr. Beane for chronic right lower extremity radicular pain, numbness and tingling, which he described as disabling. Dr. Beane kept plaintiff out of work from April 26, 2005 until June 12, 2005, during which time plaintiff was not able to perform even his desk job. The Commission finds that that time out of work was a proximate result of the accident with Greensboro Pipe on June 5, 2003.
9. A lumbar myelogram and CT scan on June 5, 2005 demonstrated a herniation at L4-5 on the left and a protrusion at L5-S1 on the left with a 6 mm. retrolisthesis at that level. Plaintiff met with Dr. Beane on June 21, 2005 to discuss his options. Dr. Beane offered either a decompression or a lumbar fusion, but plaintiff indicated that he did not want surgery at that time. *Page 6 
10. On June 12, 2005, plaintiff was seen by Dr. Parish A. McKinney. Plaintiff told Dr. McKinney that he had gone back to work because he could not afford to be out of work. He also told Dr. McKinney that he was having continued back problems, including another ruptured disc, and that Dr. Beane wanted to do further surgery. Dr. McKinney noted that plaintiff might need surgery within a month.
11. On July 29, 2005, Dr. Ramos performed repeat bilateral facet injections at L4-5 and L5-S1. On August 16, 2005, Dr. Ramos wrote that plaintiff was doing at least 95% better and that he was having minimal pain.
12. Within a few weeks of the facet injections on July 29, 2005, plaintiff's severe back pain returned. Between September 2005 and January 23, 2006, plaintiff continued to have pain. During that time, he periodically told his supervisor, Mike Ussery, that he was having ongoing back problems. There were several days that plaintiff had to leave work early because of his back pain. There were also several full days during that period of time when he was absent from work due to his pain.
13. On January 23, 2006, plaintiff was on his way to work with Mabe Trucking when he slipped on a tile floor and fell to the ground. The floor was wet because it was raining. After the accident, plaintiff worked for a short period of time. Mabe Trucking's Safety Director, who is also plaintiff's stepmother, made an appointment for him to go to Morehead Memorial Hospital for an evaluation.
14. On January 23, 2006, plaintiff was seen at Morehead Memorial Hospital. He reported that he fell onto his buttocks and that he was having pain in his low back on the right side, with radiation down his right leg. He indicated that the radiation that he was suffering was no different than his chronic pattern, and that chronically he had occasional pain to his foot, with *Page 7 
numbness in his toes, and sensation of his heel being on fire. The assessment was that the plaintiff was having recurrent right lumbar pain post fall to floor, but with no new symptoms.
15. Plaintiff went to see Dr. Ramos on February 2, 2006. He told Dr. Ramos that he was having pain in his back going down his right leg with some burning sensation into his right heel. The assessment included low back pain with radiation into the right leg and into the bottom of the heel.
16. When plaintiff saw Dr. Beane on February 22, 2006, he was again complaining of right-sided symptoms. He did not complain of any left-sided symptoms on that date. The impression was recurrent radicular pain with disc degeneration at L4-5 and L5-S1.
17. On March 8, 2006, plaintiff returned to see Dr. Beane and reported symptoms on both sides, but worse on the left side. On March 22, 2006, Dr. Beane discussed options with plaintiff, including a lumbar decompression and a lumbar fusion, which were options that had also been discussed on June 21, 2006. Plaintiff did not want a fusion, but decided to have a decompression. On May 4, 2006, Dr. Beane performed a microdiskectomy at L4-5 and L5-S1 on the left.
18. Dr. Beane testified that plaintiff's second accident of January 23, 2006 aggravated plaintiff's underlying back condition and precipitated his need for surgery. In addition, Dr. Beane testified that he could not apportion a certain percentage of plaintiff's current condition between the two accidents. Thus, the Commission finds that plaintiff's May 4, 2006 surgery was due to a combination of the accidents that he sustained on June 5, 2003 and January 23, 2006 and that the herniations at L4-5 and L5-S1, which were decompressed on May 6, 2006, were proximately caused by the accident of June 5, 2003. *Page 8 
19. Plaintiff reached maximum medical improvement on December 29, 2006, the date that he was released by Dr. Beane with respect to the surgery performed on May 4, 2006. Dr. Beane indicated that, by December 29, 2006, plaintiff was back to his pre-January 2006 baseline. These ongoing restrictions are essentially the same restrictions that plaintiff had as a result of his accident on June 5, 2003.
20. Subsequent to the accident of January 23, 2006, except for those short periods referred to herein during which he worked, plaintiff was totally disabled and remained so through the date of the Deputy Commissioner's hearing. Dr. Beane and Dr. Ramos kept plaintiff out of all work continuously, from shortly after his January 23, 2006 accident until Dr. Beane released plaintiff from care on December 29, 2006. At that time, Dr. Beane assigned plaintiff restrictions of no lifting over 10 pounds, no prolonged sitting or standing, and no unsupported or repetitive bending at the waist.
21. The Commission finds that, based on plaintiff's vocational background, the restrictions imposed by Dr. Beane rendered plaintiff unable to work as a practical matter. Despite that, as of the date of the Deputy Commissioner's hearing, plaintiff had contacted Mabe Trucking about attempting to return to work, but no decision had been made as to whether he would be allowed to do so. Additionally, plaintiff testified that he will likely continue his search for employment elsewhere if he is unable to return to work for Mabe Trucking.
22. Plaintiff was totally disabled from any employment from May 21, 2004 to June 3, 2004, June 16, 2004 to July 25, 2004, and April 26, 2005 to June 12, 2005, as a proximate result of the accident he suffered with Greensboro Pipe on June 5, 2003.
23. Plaintiff was totally disabled from any employment from February 6, 2006 to February 19, 2006 and February 22, 2006 and continuing as a proximate result of a combination *Page 9 
of the injuries suffered in the accident with Greensboro Pipe on June 5, 2003 and the accident with Mabe Trucking on January 23, 2006.
24. The medical evidence presented does not show the relative contribution to plaintiff's injuries and disability resulting from the June 5, 2003 or January 23, 2006 incidents. Therefore, apportionment is not possible and both carriers shall be jointly and severally liable for payment of plaintiff's compensation.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On June 5, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with Greensboro Pipe. N.C. Gen. Stat. § 97-2(6).
2. As a result of his compensable injury by accident on June 5, 2003, plaintiff was disabled from work and is entitled to temporary total disability benefits at a rate of $347.29 per week from May 21, 2004 until June 3, 2004, from June 16, 2004 until July 25, 2004, and from April 26, 2004 until June 12, 2005. N.C. Gen. Stat. § 97-29. Greensboro Pipe and Selective Insurance Company are responsible for payment of this compensation.
3. As a result of his compensable injury of June 5, 2003, plaintiff sustained 15% permanent partial disability to his back. N.C. Gen. Stat. § 97-31(23).
4. On January 23, 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with Mabe Trucking. N.C. Gen. Stat. § 97-2(6).
5. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment *Page 10 
and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 682 (1982). In this case, Dr. Beane released plaintiff from care on December 29, 2006. At that time, Dr. Beane assigned plaintiff restrictions of no lifting over 10 pounds, no prolonged sitting or standing, and no unsupported or repetitive bending at the waist. Plaintiff's attempt to return to work for Mabe Trucking constitutes a reasonable effort to obtain employment that had not, as of the date of the Deputy Commissioner's hearing, been successful. The reasonableness of plaintiff's efforts to return to work is further evidenced by his testimony that he will likely continue his search for employment elsewhere if he is unable to return to work for Mabe Trucking. Thus, plaintiff has met his burden of proving continuing disability and defendants have not rebutted the presumption. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As a proximate result of the combination of the compensable accidents on June 5, 2003 and January 23, 2006, plaintiff has been disabled from work and is entitled to temporary total disability benefits at a rate of $389.75 per week from February 6, 2006 to February 19, 2006, and from February 22, 2006 and continuing until he returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29;
7. While plaintiff has reached his pre-January 2006 baseline and his current restrictions are essentially the same as they were before the accident on January 23, 2006, he has not returned to work. Equity dictates that both defendant-employers are equally liable for the payment of plaintiff's ongoing temporary total disability benefits. However, Greensboro Pipe and Selective Insurance Company would be prejudiced by paying half of plaintiff's compensation at the higher rate that is attributable to plaintiff's employment with Mabe Trucking. Accordingly, Greensboro Pipe and Selective Insurance Company shall pay *Page 11 
compensation to plaintiff at a weekly rate of $173.64 (half of $347.29), and Mabe Trucking and Phoenix Fund, Inc., In Rehabilitation shall pay the remaining weekly rate of $216.11, so that plaintiff receives the full compensation rate of $389.75.
8. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); -25.
9. Defendants are jointly and severally responsible for all medical treatment incurred by the plaintiff since January 23, 2006 or to be incurred by plaintiff in the future as a result of his compensable back injuries. Royce v. Rushco Food Stores, 139 N.C. App. 322, 533 S.E.2d 284
(2000).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, Greensboro Pipe and Selective Insurance Company shall pay plaintiff temporary total disability benefits at a rate of $347.29 for the following periods of time, if not previously paid: May 21, 2004 to June 3, 2004; June 16, 2004 to July 25, 2004; and April 26, 2004 to June 12, 2005. Greensboro Pipe and Selective Insurance Company shall also pay plaintiff the difference between what he should have been paid and what he was actually paid for the periods that plaintiff was previously underpaid.
2. Subject to an attorney's fee approved below, Greensboro Pipe and Selective Insurance Company shall pay temporary total disability benefits to plaintiff at a weekly rate of *Page 12 
$173.64 (half of $347.29) and Mabe Trucking and Phoenix Fund, Inc., In Rehabilitation shall pay the remaining weekly rate of $216.11, so that the plaintiff receives total weekly compensation of $389.75 from February 4, 2006 to February 19, 2006 and from February 22, 2006 and continuing until plaintiff returns to work or until further order of the Industrial Commission.
3. Defendants Greensboro Pipe and Selective Insurance Company and Mabe Trucking and Phoenix Fund, Inc., In Rehabilitation are jointly and severally liable and shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. This shall apply to any and all medical treatment which plaintiff has had to his back since January 23, 2006, as well as medical treatment in the future that is due to the accidents.
4. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraphs 1 and 2 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel.
5. Defendants are equally responsible for the costs of this action.
This 27th day of February, 2008.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ PAMELA T. YOUNG CHAIR
 S/______________________ DANNY LEE McDONALD COMMISSIONER
 *Page 1