* * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the competent evidence of record, the Full Commission finds as facts and concludes as matters of *Page 2 
law the following which were entered into by the parties prior to and at the hearing before the deputy commissioner as:
 STIPULATIONS
1. On February 14, 2003, defendant-employer and plaintiff were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant-employer and Travelers Insurance Company was the workers' compensation insurance carrier on the risk. Travelers Insurance Company provided workers' compensation insurance to defendant-employer between December 20, 2002 and February 15, 2003.
3. On April 11, 2003, defendant-employer and plaintiff were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. On that date, an employment relationship existed between plaintiff and defendant-employer.
5. On February 14, 2003 and April 11, 2003, plaintiff alleges that he sustained injuries by accident arising out of and in the course of his employment with defendant-employer.
6. At all relevant times to plaintiff's injury on April 11, 2003, Source One Group, Inc. was acting as an agent of defendant-employer.
7. Travelers Insurance Company has paid plaintiff no disability or medical compensation.
8. Plaintiff last worked for defendant-employer on May 16, 2003. Plaintiff received his regular wages from defendant-employer until that time and is not claiming any temporary disability benefits prior to May 16, 2003.
 * * * * * * * * * * * *Page 3 
The following were marked and received into evidence as:
 EXHIBITS
Stipulated Exhibit No. 1 — Medical Records, Discovery Responses, and Industrial Commission Forms.
Stipulated Exhibit No. 2 — Letter dated September 14, 2004.
Stipulated Exhibit No. 3 — 2003 Carolina Cobras Season Injury Tracking Report.
Stipulated Exhibit No. 4 — Checks from Source One Group dated December 18, 2003, December 31, 2003, January 15, 2004, and March 19, 2004.
Defense Exhibit No. 1 — Certificate of Insurance and Client Service Agreement dated March 8, 2003.
Defense Exhibit No. 2 — Email correspondence dated May 5, 2003.
Defense Exhibit No. 3 — Packet of letters between Carolina Cobras and Source One Group from September 18, 2003 through October 21, 2003.
Defense Exhibit No. 4 — Wire Transfers from Carolina Cobras to Source One Group dated March 13, 2003, April 4, 2003, May 7, 2003, and June 16, 2003.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon all of the competent evidence in the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 28 years old. He attended and graduated from Athens Drive High School in Raleigh, North Carolina where he played high school football. Thereafter, he attended North Carolina Central University on an athletic scholarship. He played football during all four years of college. After college, *Page 4 
plaintiff played football professionally with the Washington Redskins, New York Jets, St. Louis Rams, and the Carolina Cobras.
2. In the fall of 2003, the plaintiff began working for the defendant as a professional football player. Plaintiff's salary was $1,500.00 per week for the 2004 Arena Football League Season. In addition to plaintiff's weekly salary of $1,500.00, defendant-employer provided plaintiff with furnished housing, utilities, a washer and dryer, and per diem allowances in lieu of wages. Mr. Darrell Harbin, former General Manager of the Carolina Cobras, and plaintiff testified regarding the costs of the housing, utilities, washer and dryer, and furniture allowances defendant provided to plaintiff as totaling $244.50 per week for the 16 week contract period. This does not include the $75.00 to $100.00 plaintiff was paid in per diem for the eight away games, which based on at least $75.00 for away games would increase the $244.50 to a total of $282.00 per week. Defendant has offered no evidence to the contrary.
3. On February 14, 2003, plaintiff was playing football as a defensive back for defendant. During the course of the game, he was blind-sided and cut blocked by a member of the opposing team. Plaintiff did not see the opposing player before he was struck. The opposing player hit plaintiff's right knee from the outside, causing it to bend inward. The opposing player's "cut block" against plaintiff was an infraction of the game's rules. As a result of this illegal blow to plaintiff's right knee, plaintiff sustained a tear of the anterior horn of the lateral meniscus. Plaintiff reported this injury to defendant on the day it occurred. Dr. Jerry Barron, plaintiff's authorized treating physician, performed a meniscectomy to repair the tear on March 6, 2003. *Page 5 
4. Plaintiff returned to "game play" status on April 11, 2003. Although he returned to play, plaintiff felt that his knee was weak and unstable. He could not run at full speed and he was unable to cut and plant normally.
5. During the game on April 11, 2003, a pass was thrown to a member of the opposing team. Plaintiff ran toward the receiver as he was catching the pass. As plaintiff attempted to make a tackle, the receiver unexpectedly balled himself around the football and he fell to the ground. Plaintiff was unprepared for this move by the opposing player, which caused the opposing player's helmet to strike plaintiff's right thigh. The direct blow from the opposing player's helmet to plaintiff's right thigh caused plaintiff's right knee to hyper-extend.
6. After plaintiff's injury on April 11, 2003, he returned to Dr. Barron on April 25, 2003 and had an equivocal McMurray's test. Plaintiff was unable to play football during the remainder of the football season. After the regular season ended, plaintiff continued to receive conservative treatment from Dr. Barron. Plaintiff participated in physical therapy four to five days per week.
7. During the summer of 2003, Dr. Barron eventually ordered a second MRI of plaintiff's right knee. The MRI suggested that plaintiff may have a new meniscal tear. The same study also suggested that the abnormalities may simply be a result of the previous meniscectomy.
8. On September 8, 2003, plaintiff underwent a second surgery by Dr. Barron. During surgery, Dr. Barron determined that plaintiff had another tear of the anterior horn of the lateral meniscus. He also had a significant tear of his anterior cruciate ligament (ACL). Dr. Baron opined that plaintiff's ACL tear was caused when his knee was hyper-extended by the accident on April 11, 2003. Dr. Baron further stated that plaintiff's knee was more susceptible to hyperextension as a result of his injury on February 14, 2003 and that quadriceps weakness can *Page 6 
make an individual more prone to sustaining an ACL tear. Dr. Baron opined that plaintiff's quadriceps weakness from his February 14, 2003 injury was a contributing factor in his ACL tear.
9. During the September 8, 2003 surgery, Dr. Barron repaired the tear of the anterior horn of the lateral meniscus. Dr. Barron opined that the plaintiff had a meniscal tear in February 2003 from which he successfully recovered and when he returned to "game play" status he was again injured in April 2003 sustaining an ACL tear which substantially aggravated his prior meniscus tear. Dr. Barron further opined that it is not possible to apportion the relative contributions of the two injuries to the cause of the second tear of the anterior horn of the lateral meniscus.
10. Dr. Barron performed ACL reconstruction surgery on December 8, 2003. During the surgery, Dr. Barron found that plaintiff had grade 2-3 chondromalacia. Plaintiff's grade 2-3 chondromalacia was caused by both of his injuries. Dr. Barron opined that as a result of plaintiff's injuries and resulting 2-3 chondromalacia, he would need future medical treatment.
11. On June 18. 2004, Dr. Barron determined plaintiff to be at maximum medical improvement and assessed a 20% permanent partial disability impairment to plaintiff's right knee.
12. After April 11, 2003, plaintiff was unable to earn wages from defendant-employer or any other employer until January 2, 2004. During the summer of 2003, while continuing to undergo treatment for his injuries, plaintiff volunteered as a coach at Shaw University hoping to be hired to work for Shaw University as an assistant football coach in 2004. *Page 7 
13. On January 2, 2004, Shaw University hired plaintiff as an assistant football coach. Plaintiff held this position until March 13, 2005. While employed by Shaw University, plaintiff earned $576.92 per week.
14. Plaintiff began working for a new employer on March 14, 2005 earning a weekly salary of $576.92 per week.
15. From April 11, 2003 through January 1, 2004, plaintiff was incapable of earning wages in any employment as a result of his injuries on February 14, 2003 and April 11, 2003.
16. Although plaintiff was unable to play football after April 11, 2003 as a result of his right knee condition, defendant-employer continued to pay him his regular salary through May 16, 2003.
17. As a result of plaintiff's injury or injuries, defendant-employer, through its agent, Source One Group, paid plaintiff compensation for total disability pursuant to N.C. Gen. Stat. §§ 97-18(b) and 97-29. Defendant-employer paid plaintiff compensation for total disability totaling $8,448.00. The evidence of record is insufficient to prove by its greater weight that defendant-employer or its agent, Source One Group, paid plaintiff compensation more than $8,448.00.
18. After making payments to plaintiff totaling $8,448.00, defendant-employer and its agent, Source One Group, ceased payments of compensation for total disability without seeking or obtaining an order from the Industrial Commission allowing suspension or termination of compensation for total disability.
19. The competent evidence of record establishes that defendant-employer did not possess a workers' compensation insurance policy on April 11, 2003. *Page 8 
20. Both defendants, Carolina Football Enterprises and Travelers Insurance Company refused to accept plaintiff's claims and filed Form 61s. Based on the totality of the evidence of record, the Full Commission finds that both defendants defended these claims without reasonable ground pursuant to N.C. Gen. Stat. § 97-88.1 and an assessment of costs is appropriate.
21. The competent medical evidence presented does not show the relative contribution to plaintiff's injuries and disability resulting from the February 14, 2003 incident or the April 11, 2003 incident. Therefore, apportionment is not possible and both carriers shall be jointly and severally liable for payment of the plaintiff's compensation. Furthermore, it is not possible to apportion the relative contributions of plaintiff's two injuries to his total or partial disability since April 11, 2003.
22. The Full Commission finds that in determining plaintiff's average weekly wage, the plaintiff worked less than 52 weeks at the time of his compensable injuries by accident, and that the nature of professional football and how contracts are negotiated and paid prohibit calculating the plaintiff's average weekly wage based upon actual weeks plaintiff worked prior to his injuries. The Full Commission finds that there is no evidence of record of a similarly situated employee's average weekly wage, therefore, unjust results occur by using previously enumerated methods one, two, three and four. Consequently, method five must be used to calculate the plaintiff's average weekly wage that will most accurately approximate the plaintiff's earnings.
23. The competent evidence in the record establishes and the Full Commission finds that the plaintiff's yearly salary plus per diem expenses totaled $28,512.00 and that the plaintiff's average weekly wage should be calculated by dividing this amount by 52 weeks, yielding an average weekly wage of $548.31. *Page 9 
24. Defendant-employer provided evidence that they had paid monies to the Source One Group, a Professional Employer Organization, to provide workers' compensation insurance for the Carolina Cobras. Mr. Harbin testified that the Carolina Cobras had paid Source One Group $60,000.00 on three different occasions pursuant to their contract, which was received as defendant's Exhibit No. 1. Defendant-employer considered itself to be in compliance with the Act until problems with payments to claimants put them on notice that there was a problem with Source One Group. Defendant-employer took steps to rectify the situation.
25. Subsequent to the issuance of its March 22, 2007 Opinion and Award, the Full Commission filed an Order on May 7, 2007, clarifying the assessment of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. In that Order, the Full Commission found that both defendants, Carolina Football Enterprises and Travelers Insurance Company, filed Industrial Commission forms denying the claims, defended the matter together and were found by the Industrial Commission to be jointly and severally liable for all plaintiff's indemnity and medical expenses. Accordingly, Travelers and Carolina Football Enterprises were assessed a sanction in the form of other costs in the amount of $500.00 to be equally divided between each defendant, as the Full Commission found each "party" defended these claims without reasonable ground pursuant to N.C. Gen. Stat. § 97-88.1.
26. Also subsequent to the issuance of its March 22, 2007 Opinion and Award, the Full Commission filed an Order on November 2, 2007 in which plaintiff's counsel was awarded attorney's fees pursuant to N.C. Gen. Stat. § 97-88 in the amount of $7,087.50 based on an affidavit submitted by plaintiff's counsel. In addition, plaintiff was awarded an amount equal to 10% of each installment due plaintiff that was not paid within 14 days of becoming due and interest on the accrued amount of compensation due, pursuant to N.C. Gen. Stat. § 97-86.2, from *Page 10 
the date of hearing before the Deputy Commissioner until paid, at the legal rate of interest provided in N.C. Gen. Stat. § 24.1.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and the directives of the North Carolina Court of Appeals, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained injuries by accident arising out of and in the course and scope of his employment with defendant-employer on February 14, 2003 and April 11, 2003. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff had worked less than 52 weeks at the time of his compensable injuries by accident; therefore his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Due to the nature of professional football and how contracts are negotiated and paid, fair and just results cannot be obtained via the third method provided in N.C. Gen. Stat. § 97-2(5), which calculates the average weekly wage based on the actual weeks plaintiff worked prior to his injuries of February 14, 2003 and April 11, 2003. No evidence has been presented of the average weekly wage of an employee of the same grade and character as plaintiff and in the same locality or community earned in the fifty two weeks preceding plaintiff's injury by accident, therefore it is impossible to calculate plaintiff's average weekly wage according to the fourth method provided in N.C. Gen. Stat. § 97-2(5). Calculating plaintiff's average weekly wage by any of the foregoing methods would be unfair; therefore, for these exceptional reasons the fifth method of N.C. Gen. Stat. § 97-2(5) must be used to calculate the method for plaintiff's average weekly wage that most accurately approximates the amount which plaintiff would be earning were it not for the injury he *Page 11 
sustained. N.C. Gen. Stat. § 97-2(5). Plaintiff's average weekly wage should be determined from the amount he would have earned if he had continued to play football for defendants. This is the approach previously applied by the Full Commission for professional football players, which was affirmed on appeal. Larramore v. Richardson SportsLimited Partners, 141 N.C. App. 250, 540 S.E.2d 768 (2000).
3. As a result of plaintiff's compensable injuries by accident, plaintiff is entitled to payment of temporary total disability compensation at the rate of $365.72 per week from May 17, 2003 through January 1, 2004. N.C. Gen. Stat. § 97-29.
4. As a result of plaintiff's compensable injuries by accident, plaintiff is entitled to permanent partial disability compensation at the rate of $365.72 per week for 40 weeks for the 20% permanent impairment to his right knee. N.C. Gen. Stat. § 97-31(15).
5. Defendant-employer's payment of disability compensation totaling $8,448.00 constitutes an award of the Commission for payment of compensation pursuant to N.C. Gen. Stat. §§ 97-29 and 97-82(b).
6. Defendants are entitled to an offset in the amount of $8,448.00 against the disability compensation due plaintiff. N.C. Gen. Stat. § 97-42.
7. Defendants are jointly and severally liable for payment of all disability compensation due plaintiff since May 17, 2003. In addition, defendants are jointly and severally liable for payment of all medical expenses incurred by plaintiff since April 11, 2003. Defendants are jointly and severally liable for payment of all future medical expenses incurred for treatment on plaintiff's right knee injuries. Royce v.Rushco Food Stores, 139 N.C. App. 322, 533 S.E.2d 284 (2000). *Page 12 
8. Plaintiff is entitled to payment of all past and future medical expenses incurred for treatment of his right knee injuries, including mileage, hotel and meal expenses incurred for travel from Raleigh to Charlotte. N.C. Gen. Stat. § 97-25.1.
9. Plaintiff is entitled to payment of an amount equal to 10% of each installment due plaintiff since May 17, 2003 that was not paid within 14 days of the date the installment became due. N.C. Gen. Stat. § 97-18(g).
10. Defendants (Travelers and Carolina Football Enterprises) defended plaintiff's claim without reasonable ground. N.C. Gen. Stat. § 97-88.1;Sparks v. Mountain Breeze Restaurant, 55 N.C. App. 663, 665,286 S.E.2d 575, 576 (1982).
 * * * * * * * * * * *
Based upon the foregoing findings of fact, conclusions of law and the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at the rate of $365.72 per week from May 17, 2003 through January 1, 2004. This amount has accrued and therefore shall be paid in a lump sum directly to plaintiff, after deduction of the sum of $8,448.00 for compensation previously paid to plaintiff.
2. Subject to the attorney's fee approved below, defendants shall pay plaintiff permanent partial disability compensation at the rate of $365.72 per week for 40 weeks for the 20% permanent partial disability sustained to his right knee. *Page 13 
3. Defendant-employer shall pay plaintiff an amount equal to 10% of each installment due plaintiff since May 17, 2003 that was not paid within 14 days of the date installment became due. This amount shall be paid in a lump sum, directly to plaintiff.
4. Defendants shall pay all medical expenses incurred for past and future treatment of plaintiff's right knee injuries, including mileage, hotel and meal expenses incurred for travel from Raleigh to Charlotte.
5. A reasonable attorney's fee of 25% of the compensation benefits due plaintiff in Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-90.
6. Plaintiff's counsel has previously been awarded attorney's fees in the amount of $7,087.50 pursuant to N.C. Gen. Stat. § 97-88.
7. Pursuant to N.C. Gen. Stat. § 97-88.1, defendants (Travelers and Carolina Football Enterprises) shall each pay to plaintiff's counsel costs in the amount of $250.00, for a total of $500.00 for unreasonably defending this claim.
8. Having considered the mitigating circumstances discussed in the findings of fact, the Full Commission does not assess penalties against defendant-employer for failing to have workers' compensation insurance as required by the Act.
9. Defendants shall pay the costs.
This the ___ day of June 2008.
 S/___________________
 PAMELA T. YOUNG
 CHAIR *Page 14 
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1